## ROYAL ARCANUM v. RILEY.

1. Where a contract exists between a member of a mutual benefit society, on whose life a benefit certificate has been issued, and the beneficiary named therein, whereby it has been agreed that the beneficiary should be named in such certificate on consideration that he should pay the dues and assessments thereof, and where such contract has been fully performed on the part of the beneficiary, the beneficiary will acquire a vested equitable interest in the benefits of the certificate.

2. If a contract of the character mentioned in the preceding note was made between the member and two of his sons, on consideration that each should pay one half of the dues and assessments, and that both should be beneficiaries, and after the issuance of the joint certificate the contract be performed by both the beneficiaries, each would be charged with notice of the equity of the other.

(a) If, after the death of the member, a suit be instituted by one of the beneficiaries against the other beneficiary and the society, for his part of the insurance, and the petition sets out and declares upon the equity as stated above, and the entry of service by the officer recites that he has served the petition personally on a named agent of the society at its office in a designated city, and the society pleads to the merits of the case without raising any question as to the fact of service or its sufficiency, the society will be held to have had notice of the equity from the date of the service.

(b) In such a suit, where payment by the society to its codefendant, as sole beneficiary under a subsequent certificate procured by the member without the knowledge or consent of the plaintiff, is relied on as a defense, both defendants having notice at the time of the payment, the plaintiff's equity will be superior to any right of either of the defendants, and such payment under the circumstances will not constitute a valid defense to the action.

3. Under the principles announced in the preceding notes, none of the assignments of error require the grant of a new trial. The evidence authorized the verdict.

4. As the judgment on the main bill of exceptions will be affirmed, the cross-bill of exceptions will be dismissed.

FEBRUARY 10, 1915.

Complaint. Before Judge Pendleton. Fulton superior court. January 27, 1914.

J. L. Riley instituted an action against Robert E. Riley and Royal Arcanum, in the superior court of Fulton county, to recover one half of the proceeds of an alleged insurance policy issued by Royal Arcanum, whereby that institution contracted, upon the death of E. S. Riley, to pay to the beneficiaries therein named, J. L. Riley and Robert E. Riley, three thousand dollars. The petition was amended by striking out the first sentence in paragraph 7 and all of paragraph 10, which related to the want of consent upon the

part of E. S. Riley and mental and physical incapacity upon his part to make a change in the beneficiaries of the alleged contract, and undue influence on the part of Robert E. Riley over his father, and in lieu thereof making additional allegations of a contract between E. S. Riley and his two sons, Robert E. and James L. Riley, by which a former "policy" issued to E. S. Riley by Royal Arcanum should be so changed as that each of the two sons should become beneficiaries and receive one half of the proceeds thereof if each should pay one half of the premiums during the life of their father, and full performance of such contract; and by alleging that payments were made by the plaintiff up to the death of E. S. Riley, without his having consented to a change in the beneficiaries from those agreed upon between his brother, his father, and himself, and without any knowledge that such change had been made. The plaintiff alleged that he was informed that such a change was made on the 14th day of August, 1910. When his evidence was concluded, the court, on motion, dismissed the case as to Robert E. Riley, but refused to dismiss it as to Royal Arcanum; and the trial as to that defendant proceeded. The jury returned a verdict for the plaintiff. The Royal Arcanum made a motion for new trial on the general grounds, which motion was amended by adding other grounds complaining of rulings upon the admissibility of evidence, of certain portions of the charge of court, and of the refusal of the judge to direct a verdict in favor of the defendant. The motion was overruled, and the movant excepted. The plaintiff filed a cross-bill of exceptions, assigning error upon exceptions pendente lite to the order dismissing the case as to Robert E. Riley. Other facts will sufficiently appear in the opinion.

*Dorsey, Brewster, Howell & Heyman,* for Royal Arcanum.

*Watkins & Latimer,* contra.

ATKINSON, J. 1. This case was before the Supreme Court on a former occasion. *Riley v. Royal Arcanum,* 140 *Ga.* 178 (78 S. E. 803). The judgment of the trial court, dismissing the petition on general demurrer, was reversed. The petition did not set forth a copy of the alleged policy issued by Royal Arcanum, and it was construed to be a suit involving liability upon a policy of insurance. In the course of the opinion it was said: "The instrument sued upon is alleged to be a policy of insurance; and in the absence of allegations to the contrary, upon general demurrer it will

be considered an ordinary policy of insurance, in which the beneficiaries named had a vested interest, especially in view of the fact that they had paid the premiums thereon. If it had been shown by the petition that what is called a policy of insurance was a certificate of membership in a fraternal beneficiary society, a different question would have been raised." On the trial before the jury the evidence was such as to present question last alluded to. It appeared that Royal Arcanum was a mutual benefit society, and that the sum sought to be recovered was the proceeds of a benefit certificate issued by the society to one of its members, who was the father of plaintiff and the individual defendant. The two sons were named as beneficiaries in a certificate issued February 3, 1906. The member surrendered the certificate in August, 1910, and procured as a substitute another in which only one of the two sons was named as beneficiary. After the death of the member, and after service of the suit, the society settled with the beneficiary named in the last certificate on the basis that the cobeneficiary designated with him in the former certificate had no interest. The plaintiff was the son omitted from the last certificate. It was contended by him, that a contract was made between his father, his brother, and himself, the terms of which were that the two sons should pay all assessments and dues required by the society until the death of the member, and in consideration thereof they should be the beneficiaries in the certificate; that under such agreement the certificate was issued, payable to them jointly as above stated, and the plaintiff and his brother proceeded to pay all assessments and dues according to the agreement; that the substitution occurred without the plaintiff's knowledge or consent, and he continued thereafter to pay his half of the dues and assessments until the death of his father, which occurred in April, 1911; and that by reason of such contract and its performance he acquired a vested interest as beneficiary under the former certificate, which was not divested by the substitution of the last certificate. The evidence was uncontradicted that each of the two sons paid one half of the assessments and dues required by the company from the issuance of the joint certificate in 1906 until the death of the member. The court admitted evidence of the alleged contract, and, in his instructions to the jury, submitted only the question as to whether there was such a contract as contended by plaintiff. The control-

ling question is, if there was a contract as contended by the plaintiff and it was fully performed, what interest did the plaintiff acquire, and could it be defeated merely by the fact that the member substituted the last certificate which purported to change the beneficiary? In the course of the opinion in the well-considered case of McKeon v. Ehringer, 48 Ind. App. 226 (95 N. E. 604), it is said: "The general rule seems to be that a person who is a mere volunteer beneficiary, named in the certificate issued by a mutual benefit society upon the life of one of its members, acquires no vested right in the proceeds of such certificate until the death of the member occurs. Masonic etc. Soc. v. Burkhart (1887), 110 Ind. 189 [10 N. E. 79]; Presbyterian Mut. Assur. Fund v. Allen, 106 Ind. 593 [7 N. E. 317]; Bunyan v. Reed, 34 Ind. App. 295 [70 N. E. 1002]; Milner v. Bowman (1889), 119 Ind. 448 [21 N. E. 1094], 5 L. R. A. 95; Sabin v. Phinney (1892), 134 N. Y. 423, 31 N. E. 1087, 30 Am. St. 681. Where, however, a contract exists between the member of a mutual benefit society, on whose life a benefit certificate has been issued, and the beneficiary named therein, whereby it has been agreed that the said beneficiary should be named in such certificate on consideration that he would pay the dues and assessments on such benefit certificate, or that he would render unto such member some other valuable consideration therefor, and where such contract has been fully performed and such consideration rendered on the part of the beneficiary, the courts recognize the equities arising in favor of such a beneficiary, and will protect them as against a person who has been substituted as a beneficiary, and who has no superior equities in his favor. Carter v. Carter, [35 Ind. App. 75, 72 N. E. 187]; Maynard v. Vanderwerker, 30 Abb. New Cas. 134, 24 N. Y. Supp. 932; McGrew v. McGrew (1901), 190 Ill. 604, 60 N. E. 861; Stronge v. Supreme Lodge etc., 189 N. Y. 346, 82 N. E. 433, 12 L. R. A. (N. S.) 1206, 121 Am. St. 902; Jory v. Supreme Council etc. (1894), 105 Cal. 20, 38 Pac. 524, 26 L. R. A. 733, 45 Am. St. 17; Leaf v. Leaf (1891), 92 Ky. 166, 17 S. W. 354; Supreme Council etc. v. Murphy (1903), 65 N. J. Eq. 60, 55 Atl. 497." In the opinion in the case of McGrew v. McGrew, cited above, the following language was used: "While at law such certificate is not assignable, in equity a beneficial interest may be transferred therein which will be protected by a court of chancery." The principle was also ap-

plied in Supreme Council Royal Arcanum *v.* Tracy, 169 Ill. 123 (48 N. E. 401). The doctrine above announced is not universally recognized, but it has the sanction of the weight of authority. Savage *v.* Modern Woodmen of America, 84 Kan. 63 (113 Pac. 802, 33 L. R. A. (N. S.) 773, and note). See also Cooley's Briefs on the Law of Insurance, 3764-5. Upon these authorities, if the plaintiff's contentions as to the existence of a contract and performance thereof be correct, he acquired a vested interest in the benefits of the certificate, which equity will protect.

2. The interest being one asserted against the plaintiff's brother and also the society, between whom there was a settlement after the commencement of the suit on the basis that his brother was entitled to the entire fund, if the plaintiff's interest was an equitable one, his rights against his brother and the society must be determined upon equitable principles, and his equity must be superior to any right that could be urged against it. It is declared that "He who takes with notice of an equity takes subject to that equity." Civil Code, § 4529. If there was such a contract as contended by the plaintiff, his brother, being a party thereto and participating in the payments, could not be termed a bona fide taker without notice. If there was such a contract, its existence and performance by the plaintiff were alleged in the original petition which was filed April 21, 1911, and served May 1, 1911, by serving personally a named agent of the society at its office in the city of Atlanta, before the society, on May 7, 1911, had paid the fund over to the plaintiff's brother as the sole beneficiary. The company pleaded to the merits of the case, but never questioned the fact of service or its validity. It will be deemed that the agent served was a proper agent to be served. Such filing and service of the petition would inform the society of the existence of the equity. It would be more than notice charged under the Civil Code, § 4533, which deals with the doctrine of lis pendens. In this case the society can not be said to be "taking" anything, but it is paying out funds in which it knows that the plaintiff has a vested equitable interest. Relatively to such interest, on principle the society would stand on no better footing than if it were buying with notice of an outstanding equity in the thing bought. Under such circumstances the equity of the plaintiff would be superior to any equity or right of either of the defendants; and in view of the evidence as to the contract and the

uncontradicted evidence as to payment of dues and assessments, and notice to the defendants, there was no error on the part of the trial judge in submitting to the jury the sole question as to the existence of the contract set up by plaintiff. This case differs from that of *Beckner* v. *Beckner*, 104 *Ga.* 219 (30 S. E. 622), decided by five Justices. In that case it was not contended that payments of dues out of property of the beneficiary were made by virtue of any contract between the member and the beneficiary that she should be such if she would pay the dues and premiums necessary to maintain the validity of the certificate. In the course of the opinion it was there stated: "If, therefore, the plaintiff had alleged or admitted in her petition that the laws of the society authorized a change of the beneficiary, and had relied solely upon the contention that payment by her of the assessments created in her a vested right which could not be divested by the action of the insured and the society without her consent, then the court would have been right in sustaining the demurrer to the petition." This dictum was predicated on a hypothetical state of facts which the opinion proceeded to show did not appear from the allegations of the petition, and was merely obiter.

3. It is unnecessary to specifically mention the various assignments of error. It is sufficient to say that under the principles above announced none of them require a new trial. The evidence authorized the verdict.

4. As the judgment of the trial court on the main bill of exceptions is affirmed, the cross-bill of exceptions will be dismissed.

*Judgment affirmed. Cross-bill dismissed. All the Justices concur, except Fish, C. J., absent.*