## MITCHELL *v.* LANGLEY.

1. Although a beneficiary named by a member in a certificate issued by a benefit society may not have such a vested interest as to prevent the member from changing the beneficiary, where permitted so to do by the statute law, the charter, by-laws, or certificate, yet a beneficiary who has been so named is not an entire stranger to the contract, but has such an interest that if a third person, by false and malicious defamation of the beneficiary, fraudulently induces the member to change the certificate and appoint such person as the new beneficiary, who receives the amount specified, upon the death of the member, when otherwise the fund payable at the death of the member would have been received by such original beneficiary, this will furnish a basis for an action on the case for damages by the injured person against the person so acting.

2. After the jury had been discharged in the afternoon with the consent of counsel, the court instructed them that if they should agree upon a verdict after the court took a recess for the day, it could be written and signed by the foreman, and kept by him, and the jury could return it into court the next morning. When the court assembled the next morning, all of the jury being present, a verdict was returned in the following form: "We, the jury, find in favor of the plaintiff, with seven % interest, less expense," signed by the foreman. The court directed them to return to their room and correct their verdict by inserting therein the amount which they intended to find for the plaintiff. They retired, and later returned with a verdict expressing the amount found in the plaintiff's favor. *Held,* that this was not error, and furnished no ground to arrest the judgment or for granting a new trial.

3. While some of the grounds of the motion for a new trial may have presented inaccuracies in the charge or rulings, none of them show error requiring a reversal.

AUGUST 14, 1915.

Action for damages. Before Judge Reid. Rockdale superior court. February 21, 1914.

Georgia Langley brought suit against Cora G. Mitchell, alleging in substance as follows: The plaintiff and the defendant were sisters, and they had another sister. They had a half-brother who had resided for some time in the State of Colorado, and who had been in feeble health, weak in body and mind, and liable to be influenced. In 1904, he took out a benefit certificate in the Royal Arcanum for $3,000, payable at his death to his three half-sisters, one third each. In 1911, in order to induce the member to surrender the certificate and obtain a new one excluding the plaintiff as a beneficiary and in which the defendant would be the sole beneficiary, the defendant falsely and fraudulently, and with intent to deceive him, wrote to the member a letter in which she represented that all her two half-sisters cared for was to get all they could from the member; and in another letter defendant made certain representations tending to show that her two half-sisters did not agree to pay their part of what was necessary to keep the certificate in force, and that "it seems like they didn't care or want to help brother." These representations were knowingly false and fraudulent, and the defendant maliciously intended to injure the plaintiff in the good opinion and affection of her half-brother, and to bring about an estrangement between them and cause it to be believed by him that the defendant had been guilty of misconduct and of entertaining feelings imputed to her, and thus to cause him to surrender and cancel the benefit certificate in which she was a beneficiary. By these means the defendant induced her half-brother to surrender and cancel the benefit certificate, which would have remained in force at his death, and from which the plaintiff would have received a thousand dollars principal, and to cause a new certificate to be issued, making the defendant the sole beneficiary. In doing this he believed the false representations and statements of the defendant, and was influenced by them. The member died after the change had been made, and the defendant collected the amount due under the second certificate. The plaintiff laid her damages at one thousand dollars. She also alleged that the written statement constituted a libel. By amendment it was alleged that the change in the beneficiary was procured by fraud and was void, and that the defendant was liable to the plaintiff for

money had and received.  No objection appears to have been made to adding these allegations to an action based on tort.

The plaintiff recovered, the jury making, in the verdict, a deduction on account of certain expenses which had been incurred by the defendant.  A motion for a new trial was denied, and the defendant excepted.

*A. C. & J. H. McCalla* and *Little, Powell, Smith & Goldstein,* for plaintiff in error.

*J. R. Irwin* and *Rogers & Knox,* contra.

LUMPKIN, J.  (After stating the foregoing facts.)

1. It is well settled that, in the absence of a clause of defeasance, or one providing for a change of beneficiaries, the beneficiary in an ordinary policy of life-insurance has a vested interest which the insured can not divest at his mere volition.  In benefit societies, it is generally held, the beneficiary named in the certificate does not stand in the same position as the beneficiary named in an ordinary life-insurance policy.  It has frequently been said that a beneficiary in such a certificate has only an expectancy, and not a vested interest, so as to prevent the member from making a change and substituting another beneficiary.  Some of the courts announce this as if it were the result of something inherent in the nature of benefit societies.  Others treat it as the result of some provision in the statute under which the society operates, or in its charter or by-laws, or in the certificate itself.  In other words, the latter class of courts hold that the beneficiary takes what the contract (including in that term the statute law, the charter and by-laws, and the certificate) gives him; and that, by virtue of the authority derived from such sources to make a change, the member has that right.  Sometimes the member has been referred to as having a power of appointment, with a power of revocation or substitution, and the beneficiary has been referred to as the appointee.  Nib. Acc. Ins. & Ben. Soc. (2d ed.) § 212; 1 Bac. Ben. Soc. (3d ed.) § 289 et seq.; note to Union Central Life Ins. Co. *v.* Buxer, 49 L. R. A. 737, 749, et seq. (62 O. St. 385, 57 N. E. 66) ; *Smith* v. *Locomotive Engineers etc. Assn.,* 138 *Ga.* 717 (76 S. E. 44) ; 29 Cyc. 125 (c) and citations; Locomotive Engineers etc. Assn. *v.* Winterstein, 58 N. J. Eq. 189 (44 Atl. 199).

In Hoeft *v.* Supreme Lodge Knights of Honor, 113 Cal. 91 (45 Pac. 185, 33 L. R. A. 174), it was held that fraud inducing the

insured to change the beneficiaries in his certificate of life-insurance in a benefit society, when he has a right to make the change, does not give the former beneficiaries any right to claim the proceeds as against the new beneficiary, where the insurer does not contest the validity of the insurance. This was based on the argument, that the beneficiary in such a certificate has no vested right, but only a mere expectancy, or an incomplete gift, which is revocable at the will of the insured, and which does not become vested until the death of the latter; that a right of action for fraud is personal and not transferable; that one can not be defrauded of that in which he has no vested right; and that such a beneficiary has no right of property to be protected. In that case the benefit society paid the money into court, and the controversy was between the widow of the member and his children, the latter claiming that the widow, their stepmother, had fraudulently procured the member to surrender the certificate, in which they were named as beneficiaries, and to have issued another, in which she was named as the beneficiary. The statement that the views expressed are sustained by a multitude of authority may be true to the extent that a beneficiary has no such vested interest as to prevent the member from substituting another beneficiary. But the cases cited in support of the proposition do not establish the contention that a beneficiary named in a certificate has no such interest as to authorize him to attack a fraudulent procurement of a change by a third party who receives the amount specified, upon the death of the member. In Alfsen *v.* Crouch, 115 Tenn. 352 (89 N. W. 329), a similar ruling was made. Hahn *v.* Supreme Lodge of the Pathfinder, 136 Ky. 823 (125 S. W. 259), was cited by counsel for the plaintiff in error, as making a like ruling. But, when carefully examined, that decision will be found not to sustain the two decisions above cited, but to contain a strong intimation to the contrary. It was held that a beneficiary in a certificate of insurance in a fraternal order had not a vested interest in the sense that a change in the beneficiary by the husband (who was a member) from the wife to some one else will of itself constitute a fraud on her marital rights. The opinion contains this statement (p. 829) : "Furthermore, the evidence, if any, which was heard in the court below, is not now before us. There is therefore no proof of actual fraud; and, for aught we know, the conduct of the wife may have been sufficient

to justify the husband in making the change. In the absence of a bill of exceptions the presumption is that the proof heard supports the finding of the chancellor." The inference is that if there had been proof of actual fraud, and a finding by the chancellor of its existence, the decision might have been otherwise. While the beneficiary named in a certificate of this character has not such a vested interest as will prevent the member from substituting another beneficiary in his stead, if the statute, the charter, by-laws, or certificate so authorizes, it would seem to be the sounder rule that this would not prevent the original beneficiary from proceeding by equitable petition to have a trust declared in his favor, if the benefit which would have accrued to him was diverted from him and the fund went into the possession of another by means of fraud. It is not necessary in all cases that there should be a vested right in property or a fund in order to have one who fraudulently diverts it from another, who would have received it, declared to be a. trustee ex maleficio. In *Cassels* v. *Finn*, 122 *Ga.* 33 (49 S. E. 749, 68 L. R. A. 80, 106 Am. St. R. 91, 2 Ann. Cas. 554, note), it was held that the mere failure to perform an oral promise made by the sole heir at law of one desiring to dispose of her estate by will to a third person, that he would dispose of her estate as she desired, did not make the heir at law, in case of an intestacy, a trustee ex maleficio as to the property inherited by him, in the absence of actual fraud. It was recognized that, if there had been actual fraud and interference, the heir would be declared a trustee ex maleficio.

In *Cason* v. *Owens*, 100 *Ga.* 142 (28 S. E. 75), certain children brought suit against their mother, alleging, that their father was holding policies in his lifetime in certain insurance, or benefit, or assessment companies, to the amount of $7,500, payable to his three children as beneficiaries, one of them, for $3,000, being in a company called the Golden Chain; that shortly before his death, the policies being in force and valid, the defendant, by undue influence and with intent to defraud the plaintiffs, induced their father to change the beneficiaries of the policies and to name her as the sole beneficiary therein; that at the time he made this change he was without sufficient mind to do business and to understand that particular act, and was influenced to make the change by the fraud of the defendant, wherefore it was alleged that the change

of beneficiaries was null and void, and that the plaintiffs in law and fact were the real beneficiaries and entitled to all the proceeds of the policies; and that after his death the defendant collected all the money on the policies, and claimed it as her own, and denied that the plaintiffs had any interest therein. It was held that the petition set out a good cause of action. The opinion shows that the policies or certificates were treated as of a character which authorized the insured or member to change the beneficiary. Little, J., said: "In the case under review, the petition alleges that the father of the plaintiffs in error procured a contract of insurance upon his life for the sum of $7,500.00, and that the plaintiffs, his children, were named as the beneficiaries thereunder. Assuming this to be true, which the demurrer filed to the proceeding admits, then these plaintiffs in error had an interest in such contract, and might under certain circumstances, even during the life of the insured, have protected such interest, while the policy was in force. . . . They were not strangers to the contract." He further said: "Undoubtedly this power of substitution exists inherently. But that is not the question in this case." It will thus be seen that this court has held that while the beneficiary of such a certificate has not a vested interest so as to prevent a change of the beneficiary by the member, he has such an interest as will authorize him to set up that the member was mentally incapable of making the change when he attempted to do so. There were also allegations of fraud, but they were not discussed. See also A. O. U. W. v. McGrath, 133 Mich. 626 (95 N. W. 739); Sovereign Camp Woodmen of the World v. Wood, 114 Mo. App. 471 (89 S. W. 891); Ownby v. Supreme Lodge Knights of Honor, 101 Tenn. 16 (46 S. W. 758), impliedly overruled or disregarded in Alfsen v. Crouch, supra. In Moan v. Normile, 37 App. Div. 614 (56 N. Y. Supp. 339), after holding that there was a right of substitution of a new beneficiary, under the facts of that case, Patterson, J., added: "If a certificate were procured by fraud upon the member, the right of the original appointee would not be impaired in a contest between rival claimants."

It will not be controverted that the power of the member to change the beneficiary may be modified by contract or by equitable considerations working an estoppel; and that if the association pays the fund into court, and thus waives defenses which it might

have under regulations made for its benefit, the equities of the contestants will be compared. *Royal Arcanum* v. *Riley,* 143 *Ga.* 75 (84 S. E. 428) ; Supreme Council Catholic Benevolent Legion *v.* Murphy, 55 N. J. Eq. 60 (55 Atl. 497).

While there were some allegations in the amendment looking in the direction of equitable relief, the action was begun as one for damages, and in its main features was so dealt with by the court and counsel; and we will consider that aspect of it. Although the beneficiary may have no vested interest which will prevent a change by the member, yet he is not an entire stranger to the transaction. The member has voluntarily caused him to be named in the contract as a beneficiary. If no change is made and the certificate remains of force, the beneficiary named will receive the benefit after the death of the member. The member, by the contract with the association, thus creates a certain status, which, unless lawfully changed, will result in the receipt of a pecuniary benefit by the appointed beneficiary. The fact that this status has not ripened into a vested and irrevocable ownership of the beneficial interest, and that the member has a right to change it, does not authorize a third party to maliciously and fraudulently destroy the status and thus prevent the interest or expectancy of the beneficiary from ripening, so that he will receive the fund. The reserved right of the member is one thing; the malicious and fraudulent interposition of a third party to destroy the status is another.

In Moran *v.* Dunphy, 177 Mass. 485 (59 N. E. 125, 52 L. R. A. 115, 83 Am. St. 289), it was held that maliciously and without justifiable cause to induce one to end his employment of another is an actionable tort. This did not depend upon causing a breach of contract for further employment. In the opinion Holmes, C. J., said: "We apprehend that there no longer is any difficulty in recognizing that a right to be protected from malicious interference may be incident to a right arising out of a contract, although a contract, so far as performance is concerned, imposes a duty only on the promisor. Again, in the case of a contract of employment, even when the employment is at will, the fact that the employer is free from liability for discharging the plaintiff does not carry with it immunity to the defendant who has controlled the employer's action to the plaintiff's harm. The notion that the employer's immunity must be a non-conductor, so far as any remoter liability

was concerned, troubled some of the judges in Allen *v.* Flood, (1898) A. C. 1, but is disposed of for this Commonwealth by the cases cited. See also May *v.* Wood, 172 Mass. 11, 14, 15 [51 N. E. 191]. So again it may be taken to be settled by Plant *v.* Woods, 176 Mass. 492, 501, 502 [57 N. E. 1011, 51 L. R. A. 339, 79 Am. St. R. 330], that motives may determine the question of liability; that while intentional interference of the kind supposed may be privileged for certain purposes, yet if due only to malevolence it must be answered for." See Civil Code (1910), § 4511. In Rice *v.* Manley, 66 N. Y. 82 (23 Am. R. 30), one S. had contracted, by parol, to sell and deliver to the plaintiffs a quantity of cheese; but being made to believe, by the fraud of the defendant, that the plaintiffs did not want the cheese, he sold it to the defendant. The contract was not binding under the statute of frauds, but would have been performed by S. had it not been for the fraud. It was held that an action was maintainable by the person originally agreeing to purchase against the person committing the fraud. Though the contract was not enforceable against the vendor, nevertheless the purchaser had such a status as could be protected against fraudulent interference by another.

The case of one who fraudulently prevents the making of a devise, and procures the property to be left to himself, has been mentioned. In May *v.* Wood, 172 Mass. 11 (51 N. E. 191), it was alleged that the plaintiff and another woman entered into an agreement to the effect that the plaintiff should continue to reside as before with the other woman, and to receive $4 as weekly compensation, and that the other woman would provide by will a legacy of $700 to be paid to the plaintiff upon the death of the testatrix. It was further alleged that the defendants, for the purpose of depriving the plaintiff of the benefit of the agreement, and of the legacy provided for the plaintiff by a codicil to the will of the testatrix (the other woman), conspired together to influence and induce the testatrix, by divers false and malicious statements, and by inducing the testatrix to believe that the plaintiff was a dangerous person and unfit associate, to break the agreement with the plaintiff; and that the testatrix was induced to break the agreement and discharge the plaintiff, and also to revoke the provision in her will for the benefit of the plaintiff. The right of action was recognized, but the majority of the court held that the false and malicious state-

ments should have been set out in the declaration. Holmes, J., in a dissenting opinion, discussed the right of action and the sufficiency of the allegations.

In Com. Dig., Action on the case (A), it is said: "In all cases, where a man has a temporal loss or damage by the wrong of another, he may have an action upon the case to be repaired in damages." Is it possible that where a will has been made, leaving a devise, a third person can fraudulently and maliciously cause the testator to revoke the devise, and thus cause a loss to the devisee, without any redress on the part of the latter? Or, if a father should make a deed of gift to his son, but before delivery another should falsely and maliciously represent that the son was a fugitive from justice, or was in penal servitude, or had died without issue, and so cause the father to destroy the deed without delivery, could it be contended that the son would have no redress for the loss occasioned to him, because the deed had not been delivered and the title had not actually vested in him? And likewise, if a member of a benefit society has caused one of his family to be named in a certificate as the beneficiary thereof, can it be successfully contended that a third party can, by malicious and fraudulent representations, cause the member to change the certificate, and thus cut off and divert to himself a benefit which would have arisen to the beneficiary, with no redress to the latter, merely because the member had the power to change the beneficiary? Would not a man have the right to receive gifts or insurance or the like, if they were in process of being perfected, and would have come to him but for malicious and fraudulent interference? A bare possibility may not be within the reason for this position. But where an intending donor, or testator, or member of a benefit society, has actually taken steps toward perfecting the gift, or devise, or benefit, so that if let alone the right of the donee, devisee, or beneficiary will cease to be inchoate and become perfect, we are of the opinion that there is such a status that an action will lie, if it is maliciously and fraudulently destroyed, and the benefit diverted to the person so acting, thus occasioning loss to the person who would have received it. It is true that such an action is not of usual occurrence, but, as was said in Kujek v. Goldman, 150 N. Y. 176 (44 N. E. 773, 34 L. R. A. 156, 55 Am. St. R. 670), that an action is new and without precedent is not conclusive against the

plaintiff's right of recovery; if he is shown to have suffered a wrong. Vann, J., quoting from Winsmore *v.* Greensbank, Willes, 577, 580, said: "A special action on the case was introduced for this reason, that the law will never suffer an injury and a damage without a remedy, but there must be new facts in every special action on the case."

It has been held that an action would lie for damages by reason of frightening wild fowl from the plaintiff's decoy. Keeble *v.* Hickeringall, Holt, 14, 17, 18, 11 Mod. 74, 134; Keeble *v.* Hickeringill, cited in a note to Carrington *v.* Taylor, 11 East, 571, 574. From the different reports it is not clear whether the action was maintained on the ground that the wild fowl were frightened out of the plaintiff's pond, or whether they were driven away and prevented from resorting thereto, as would seem to be the fact from the last citation of the case. In Tarleton *v.* McGrawley, 1 Peake, 270, 274, it was declared that an action would lie for frightening the natives upon the coast of Africa, and thus preventing them from coming to the plaintiff's vessel to trade, whereby he lost the profits of such trade. In the cases last cited it is apparent that the plaintiff had no property right in the fowl while not on his property, or in the custom of the natives, but that he was entitled to use his decoys, and to attract the natives to trade with him, without wrongful interference. These cases may be analogized to interference with one's business; but there was only an anticipation of benefit.

Actions for slander, where the words were not actionable in themselves, and special damages were claimed, furnish illustrations of losses which may be considered as damages proximately arising from a tort. In Davis *v.* Gardiner, 4 Rep. 17, it was held that, if a divine is to be presented to a benefice, and one, to defeat him of it, says to the patron that he is a heretic, or a bastard, or that he is excommunicated, by which the patron refuses to present him, and he loses his preferment, he shall have his action on the case for those slanders tending to such end. In Moore *v.* Meagher, 1 Taunton, 39, Smith, 135, it was held that the loss of hospitality of friends, gratuitously afforded, constituted special damages. So also, it has been declared, does the loss of any gratuity or present, if it be clear that the slander alone prevented its receipt. Odgers on Libel and Slander (5th ed.), 379; Hartley *v.* Herring, 8 T. R.

130.  In Matthew *v.* Crass, Cro. Jac. 323, it was held that an action for defamation, per quod the plaintiff lost his marriage, will lie.

Of course, in the instant case, it would be necessary, in order to recover, to show that a benefit would have accrued to the plaintiff, and that the statements of the defendant were false and fraudulent, and were the proximate cause of loss to the plaintiff.  But where the member died soon after the change was fraudulently procured, and the amount of the certificate was paid to the new beneficiary, the case was susceptible of proof.

2, 3.  The remaining rulings are sufficiently stated in the headnotes, and they require no further elaboration.

*Judgment affirmed.  All the Justices concur.*