These defendants are rival claimants for the proceeds of a life insurance certificate issued by the plaintiff to Dominic Gebo, now deceased. They have been ordered to interplead for the purpose of determining which one of them is entitled to the fund, which has been paid into court. A hearing has been had, the facts have been found and the chancellor has decreed the fund to Delia Gebo. Fred Gebo (individually, for he does not claim as administrator of Dominic's estate) has appealed.
Following are the material facts as found by the chancellor:
Fred Gebo was the brother and Delia is the widow, of Dominic. The certificate in question, in which Delia was the beneficiary, contained a provision enabling the insured to change the beneficiary at any time, upon written request made in a prescribed manner. It was a so-called group insurance under a plan in force for the benefit of the employees of the Fro-Joy Ice Cream Company for which concern Dominic was working, and the premiums were paid by certain sums deducted from his wages.
Delia and Dominic were married in 1929, before the policy was taken out. Dominic was then employed by his father at a wage of $40 a month. Delia had about $1,000 on deposit in a savings bank, of which she withdrew about $300 to purchase household furniture, which she still has. Before the marriage Dominic had undergone an operation for a serious abdominal ailment. Soon after the marriage, while the two were living on a farm owned by Dominic's father, the latter proposed to sell the farm to them. Delia opposed the purchase, holding that the price was excessive, and their indebtedness would be too large, and this opposition caused a coolness between her and her husband's parents. In the spring of 1930, Dominic and his wife removed to Winooski, where they lived with Delia's sister-in-law under an arrangement whereby Delia did the housework, and, with her husband, paid one-half of the expenses of the table, but they were under no charge for rent. Dominic obtained employment by the Fro-Joy Ice Cream Company, and during the same year he was transferred to the company's plant in Springfield, Mass., where he had a return of his illness, and the two returned to Vermont, where another operation was performed in February, 1931. After having sufficiently *Page 159 
recovered, Dominic went back to work for the ice cream company, and remained in its employ until January, 1932, when a third operation became necessary. The incision from this operation never healed, and it was necessary to keep it drained and dressed. Likewise the incision of the prior operation did not permanently heal, and here again drainage and dressing were required. Dominic suffered pain and was irritable when so afflicted. His physical condition grew worse and he died in September, 1932.
Delia and her husband were an affectionate couple, both being thrifty and good workers. Because of Dominic's illness and his necessary confinement in the hospital, the family expenses were heavy and Delia withdrew practically all her money to pay bills from the hospital and for nursing and surgical operations, as well as for general household purposes. She obtained employment in various places, at one time working for the ice cream company, and her earnings were used in the payment of the expenses. She also helped her husband in paying for an automobile, which he had purchased before their marriage, and upon which there was due, at that time, between $700 and $800. At the time of his death there was some $400 still unpaid. "Delia," says the chancellor, "was loyal to her husband, worked hard to care for him and to keep bills paid, used practically all of her available funds for this purpose and was kind and considerate in her treatment of her husband. All this was much appreciated by Dominic and at times he expressed this appreciation to Delia and told her in effect that he was glad he had two insurance policies because if anything happened to him, she, Delia, would have these two policies to make up what she had spent for him. The second policy referred to here was a policy for one thousand dollars in the New York Mutual Life Insurance Company and the proceeds on this policy were paid to Delia after Dominic's decease."
After this conversation she continued to work, and use her earnings and available funds for general family expenses, believing that the proceeds of the two policies were to be hers.
In June, 1932, in accordance with Dominic's wish, the couple went to the farm in Ferrisburgh to live with his mother, his father having deceased. In August, 1932, Delia took some offense at an occurrence which consisted in the mother's changing *Page 160 
the dressing upon Dominic's wound, and at Dominic's language in refusing her own offer of services, and went to her mother's house in Winooski. Shortly after this Dominic caused a change of beneficiary in the certificate of insurance, without notice to Delia, substituting the name of his brother Fred for that of his wife, and a new certificate was issued to him. This he did voluntarily for the purpose of preventing Delia from getting the benefits of the insurance, and for the purpose of avoiding the latter's equitable right and the equitable duty which he owed to her. Delia had retained possession of the original certificate and knew nothing of the change until after Dominic's death. She paid the expenses of his funeral, amounting to about $440.
There was no evidence that Dominic owed his brother Fred anything, or that there was any reason why he should wish to designate the latter as beneficiary, beyond the fact that he was his brother.
The chancellor concludes: "This situation gave her (Delia) an equitable right to the proceeds of these policies and it was the duty of Dominic to refrain from doing anything to deprive her of the benefits of these policies. She did nothing during Dominic's lifetime, or thereafter to forfeit this equitable right which she had or to relieve her husband Dominic from the duty of doing nothing to avoid her getting the benefits of the policies."
The appellant has briefed several exceptions to the findings and to the failure of the chancellor to find as requested in certain respects, but no bill of exceptions has been signed and filed, and so the questions thus involved are not before us, the only point for our consideration being whether the decree is warranted by the pleadings and supported by the findings. Brown
v. Osgood, 104 Vt. 87, 89, 156 A. 876; Stevens v. Flanders,103 Vt. 434, 435, 154 A. 673.
Where, as here, a contract of insurance so provides, the beneficiary may be changed at the instance of the insured, and no vested right, but only an expectancy, exists in the beneficiary, in the absence of facts or circumstances tending to establish an equitable interest in the proceeds of the policy. Modern Woodmenof America v. Headle, 88 Vt. 37, 46, 90 A. 893, L.R.A. 1915A, 580; Spaulding v. Mut. Life Ins. Co., 94 Vt. 42, 49, 109 A. 22;Cummings v. Conn. General Life Ins. Co., *Page 161 101 Vt. 73, 80, 142 A. 82. This principle applies whether the contracts in issue are ordinary life policies or certificates issued by mutual benefit societies (Modern Woodmen of America v.Headle, supra; N.Y. Life Ins. Co. v. Rose, 70 Cal.App. 175,233 P. 343, 344), and no reason is perceived why it should not be equally applicable where the certificate has been issued under a system of group insurance. Where, however, sound equities exist in favor of the beneficiary, such rights will be protected against the substitution of a second beneficiary who is a volunteer or who has no superior equities in his favor. Jory v.Supreme Council, 105 Cal. 20, 38 P. 524, 26 L.R.A. 733, 736, 45 A.S.R. 17; McDonald v. McDonald, 212 Ala. 137, 102 So. 38, 36 A.L.R. 761, 768; McKeon v. Ehringer, 48 Ind. App. 226, 95 N.E. 604, 606; Gaston v. Clabaugh, 106 Kan. 160, 162, 163, 186 P. 1023; King v. Supreme Council, 216 Pa. 553, 65 A. 1108, 1109;Stronge v. Supreme Lodge, 189 N.Y. 346, 82 N.E. 433, 12 L.R.A. (N.S.) 1206, 1212, 121 A.S.R. 902, 12 Ann. Cas. 941, and cases cited in annotation in 12 L.R.A. (N.S.). In such a situation it is the duty of court of chancery to determine the person to whom in equity and good conscience the fund belongs. Grand Lodge v.Child, 70 Mich. 163, 38 N.W. 1, 5.
It is the general rule that such an equitable interest may arise as the result of a contract between the beneficiary and the insured, for while the right of the designated beneficiary is not one of property, being only an expectancy, "it is of sufficient potentiality at law or in equity to permit contracts and other obligations in reference thereto, which are binding and en forceable in equity after the happening of the event which automatically enlarges the contingent into a vested right." Ryan
v. Boston Letter Carriers' Mut. Ben. Ass'n, 222 Mass. 237,110 N.E. 281, 282, L.R.A. 1916C, 1130. So, "where the designation of the beneficiary * * * is made in pursuance of an agreement founded upon a sufficient consideration, the person designated acquires a vested interest, and, unless by reason of countervailing equities, cannot be displaced." Savage v. ModernWoodmen of America, 84 Kan. 63, 113 P. 802, 803, 33 L.R.A. (N.S.) 773, 775; McGrew v. McGrew, 190 Ill. 604, 60 N.E. 861, 862; Royal Arcanum v. Riley, 143 Ga. 75, 84 S.E. 428, 430. An agreement between the insured and his wife, that she, being named as beneficiary, shall have the proceeds of the *Page 162 
insurance, if she will pay, or aid in paying, the dues or assessments upon a certificate of insurance in a mutual benefit association, followed by her doing so out of her separate estate, has been held to give her an equitable right to the fund. Sipe v.Sipe, 102 Kan. 742, 173 P. 13, L.R.A. 1918E, 1029, 1031; Savage
v. Modern Woodmen of America, supra; Supreme Council v. Murphy,65 N.J. Eq. 60, 55 A. 497, 501; King v. Supreme Council,216 Pa. 553, 65 A. 1108, 1109; Columbian Circle v. Mudra, 298 Ill. 599, 132 N.E. 213, 18 L.R.A. 378, 391. And so, too, where the claim of the wife was based upon an antenuptial contract (SupremeLodge v. Ulanowsky, 246 Pa. 591, 92 A. 711, 712; Freitas v.Freitas, 31 Cal.App. 16, 159 P. 611, 612; Ryan v. BostonLetter Carriers' Mut. Ben. Assn., supra; and see Penn. R.R. Co.
v. Wolfe, 203 Pa. 269, 52 A. 247, 248); or upon a loan, in consideration of which she was made the beneficiary (SupremeCouncil v. Tracy, 169 Ill. 123, 48 N.E. 401, 402); or upon the wife's agreement to support her husband, duly performed. SupremeCouncil v. Murphy, supra.
Under G.L. 3521, a married woman may make contracts with any person other than her husband, and so her common-law disability in the latter respect still exists in this State. But although such a contract is void and unenforceable at law, it is, if fair and just, valid and enforceable in equity. Fike v. Fike, 3 N.J. Misc. 485, 128 A. 849; Livingston v. Livingston, 2 Johns. Ch. (N.Y.) 537, 539; Shepard v. Shepard, 7 Johns. Ch. (N.Y.) 57, 61, 11 A.D. 396; Hendricks v. Isaacs, 117 N.Y. 411, 22 N.E. 1029, 6 L.R.A. 559, 561, 15 A.S.R. 524; Kimball v. Kimball, 75 N.H. 291,73 A. 408, 409; McDonald v. Smith, 95 Ark. 523, 526, 130 S.W. 515, 516; Brown v. Clark, 80 Conn. 419, 68 A. 1001, 1006; In reWilliams, 4 Boyce (27 Del.) 401, 88 A. 716, 717; and see,Porter v. Bank of Rutland, 19 Vt. 410, 417; Barron v. Barron,24 Vt. 375, 393.
The question whether there was a contract between Delia and Dominic does not depend alone upon the specific facts found, but also upon the reasonable inferences to be drawn from them. Every reasonable intendment is in support of the decree, and we will assume that the chancellor drew such inferences in favor of the prevailing party. Manley Bros. v. Somers, 100 Vt. 292, 297,137 A. 336; Labor v. Carpenter, 102 Vt. 418, *Page 163 
422, 144 A. 867; University of Vermont v. Wilbur's Estate,105 Vt. 147, 174, 163 A. 572; Lariviere v. Larocque, 105 Vt. 460,168 A. 559, 562.
As we have seen, the findings show that Delia spent her own money for the support of the family and for the expenses of her husband's illness. She worked outside her home, using the money thus obtained for the same purposes. While the premiums or assessments upon the insurance were deducted from Dominic's wages, there can be no doubt that, in a broad sense, she aided in the payment of them by her efforts in adding to the family income, thus making up, in part at least, for the curtailment of her husband's pay. She had the certificate in her possession through his delivery of it to her. When he told her that she would have the proceeds of the insurance to repay the sums which she had expended it is fairly to be inferred, from the circumstances, that it was anticipated that future expenditures by her would be necessary and that the insurance money was to compensate her for such outlay also. The fact that she continued to work and to use her earnings for the support of her ailing husband in the belief that she was to receive the fund and the payment by her of his funeral expenses warrants the inference that she had an understanding, tacit at least, with her husband to this effect. See Roberts v. Griswold, 35 Vt. 496, 499, 500, 84 A.D. 641. A contract is to be implied, and Delia's acceptance of its terms is shown by her subsequent use of her earnings. Savage
v. Modern Woodmen of America, supra, 84 Kan. 63, 113 P. 802, 33 L.R.A. (N.S.) page 777. Since the consideration consisted of future as well as of past expenditures, it was sufficient. Bagley
v. Moulton, 42 Vt. 184, 188; Roberts v. Griswold, supra; Graham
v. Stanton, 177 Mass. 321, 326, 58 N.E. 1023; Loomis v. Newhall,
15 Pick. (Mass.) 159, 165. Delia acquired an equitable right to the proceeds of the insurance.
The second beneficiary, Fred Gebo, was a volunteer, and his claim cannot override the equitable, but vested, interest of Delia. Even if he had acquired an equal equitable interest it would not prevail over hers, because where equities are in other respects equal, priority in time gives the better right. Downer
v. South Royalton Bank, 39 Vt. 25, 30; 1 Pomeroy Equity Jurisprudence (4th ed.), par. 414. *Page 164 
It is argued that by her act in leaving her husband Delia broke her contract and so lost whatever equitable rights she might have acquired. But it cannot be said, as a matter of law, that this was so. No refusal to contribute to his support appears. The weight to be given to this circumstance was for the chancellor to decide, and it is evident that he did not consider it sufficient to divest her of her interest in the certificate.
Again, it is urged that the decree does not conform to the pleadings because no fraud has been found. The claim filed by Delia asserts that "the change of the beneficiary, under the circumstances, was a fraud against her right as wife of the said Dominic Gebo; that she was left to pay the expenses of last illness and burial; that, under the circumstances, the change in beneficiary was inequitable, unjust, fraudulent, voidable and ought to be set aside." But without considering the question whether the substitution of the beneficiary was a fraudulent conveyance, and therefore void under G.L. 6893 (see Green v.Adams, 59 Vt. 602, 608, 10 A. 742, 59 A.R. 761), it is enough to say that the allegation that the change was inequitable, unjust, voidable and ought to be set aside was sufficient to support the decree. As we have seen, Delia had an equitable interest of which she could not be deprived without her consent. The substitution was beyond the power of Dominic to make. Her position does not involve the consideration of her marital rights. Her interest was vested and not inchoate and for this reason, if for no other, the case is distinguishable from Dunnett
v. Shields et al., 97 Vt. 419, 123 A. 626.
Finally, it is urged that the paragraph in the finding in which the chancellor says that Delia has an equitable right to the proceeds of the certificate is not an assertion of fact but a conclusion of law. The statement is a conclusion, but it is based upon facts and circumstances previously detailed; and whether a conclusion of law or of fact it is supported by the facts already found. Waterman v. Moody, 92 Vt. 218, 291, 103 A. 325.
Decree affirmed, and cause remanded. *Page 165