391 So.2d 799 (1980)
Elizabeth O. DAVISON, Appellant,
v.
Karl FEUERHERD and Margaret Feuerherd, Husband and Wife, Appellees.
No. 80-407.
District Court of Appeal of Florida, Second District.
December 31, 1980.
Robert W. Beaudry of Lyons & Beaudry, Sarasota, for appellant.
Carl J. Robie, III, Sarasota, for appellees.
CAMPBELL, Judge.
Elizabeth Davison appeals from the dismissal of her complaint against the Feuerherds which alleged tortious interference with an expected bequest. The trial court dismissed the complaint finding that it did not state a cause of action. We disagree.
Appellant's third amended complaint makes the following allegations:
1. Appellant is the daughter of Theodore Obrig and the stepdaughter of Delia Obrig, his wife. They raised her from childhood until she married.
2. Delia Obrig died on December 3, 1977, leaving a taxable estate of approximately $160,000. The estate of Mrs. Obrig had been devised to her by her husband, who predeceased her.
3. In 1963, Mr. Obrig had established, as part of his estate plan, a revocable trust which provided income and principal to him during his lifetime; principal and income to Mrs. Obrig after his death; and principal and income to Mrs. Davison after Mrs. Obrig's death. This trust continued after Mr. Obrig's death.
4. Mrs. Obrig eventually terminated the trust and replaced it with other living trusts which provided income and principal to her during her lifetime and the residue of the trust to various beneficiaries. In most of the trusts and amendments thereto, Mrs. Davison was the sole or primary beneficiary.
*800 5. During the summer and early fall of 1977, Mrs. Obrig was eighty years of age, living alone, and in poor physical health. She was unable to care for herself and had begun to drink "on a day to day basis." Mrs. Obrig was easily influenced and guided by any person upon whom she was dependent and with whom she was closely associated. She was hardly capable of exercising independent judgment.
6. Beginning in August of 1977 and continuing until Mrs. Obrig's death, the appellees visited Mrs. Obrig daily, prepared her meals, cleaned her house, did her laundry, and took her to the doctor and social affairs. As a result, Mrs. Obrig became dependent upon the appellees and was easily influenced and guided by them so that she was hardly capable of exercising independent will.
7. In late August or early September of 1977, Mrs. Obrig formed an intention of giving to appellant the major portion of her estate by amending her living trust so as to leave the residue of the trust to appellant. Mrs. Obrig instructed her attorney to prepare an amendment to this effect.
8. Before Mrs. Obrig had an opportunity to sign the amendment, the appellees learned of her intention. They falsely persuaded her that appellant did not love her, was not concerned about her, and was not worthy of receiving her estate. They told her that they were the only ones who cared for or looked after her, that they should be rewarded by being left her estate, and that they would withdraw the care and comfort upon which she had become dependent if she did not amend the trust to leave her estate to them.
9. Because of the relationship between Mrs. Obrig and appellant and because appellant had been the beneficiary of Mrs. Obrig's estate during most of her life, there existed a strong probability that Mrs. Obrig's intention to leave the residue of her trust to appellant would have been carried out but for the appellees' false statements and exercise of undue influence.
10. Appellant claimed damages because of the fraud and undue influence practiced by the appellees. Appellant's demand for damages included punitive damages and costs. The damage to appellant was reasonably foreseeable by appellees.
Appellees' motion to dismiss contended that the complaint did not state a cause of action. The lower court agreed and dismissed the complaint four times, the last time with prejudice.
Appellant argues that her third amended complaint states a cause of action for tortious interference with an expected bequest, a theory of liability recognized in Florida. Allen v. Leybourne, 190 So.2d 825 (Fla.3d DCA 1966). Accord, Kramer v. Freedman, 272 So.2d 195 (Fla.3d DCA 1973).
Appellees argue that Allen disregarded earlier cases which denied recovery for interference with an expected gift or legacy under a will. Appellees also attempt to distinguish Allen from the instant case as it deals with a gift of inheritance through a will rather than a trust.
Allen v. Leybourne involved an appeal by plaintiff Mrs. Allen from an adverse final summary judgment. Mrs. Allen also appealed an order dismissing one count of her complaint with prejudice. The dismissed count alleged tortious interference with an expected bequest and asserted the following facts.
Mrs. Allen was one of three daughters of James and Evelyn Leybourne. After her mother's death, the three daughters agreed that they would not interfere with their father's administration of the estate. This agreement enabled Mrs. Leybourne to receive certain tax benefits. In return Mr. Leybourne agreed to make advancements to his daughters during his lifetime and to distribute the remainder of his and Evelyn's estates to the daughters by will. He also stated that should there be any discrepancy in advancements among the daughters, he would equalize their shares in his will.
Mr. Leybourne gave a house to his daughter Martha and her husband. As part of the transaction, he reaffirmed in writing his intention to give to each daughter equally. This reaffirmation also noted that Mr. *801 Leybourne had given his daughter Sylvia a less expensive home and had as yet given nothing to his minor daughter, now Mrs. Allen.
In the next year Mr. Leybourne married the defendant. Mrs. Allen alleged that the defendant then embarked on a course of conduct designed to alienate her from her father and with knowledge of their agreement wrongfully persuaded her father not to comply with it. Mr. Leybourne died the next year leaving a will which devised all his property to the defendant.
Regarding the dismissal of the count alleging tortious interference with an expectancy, the appellate court recognized that early cases had denied recovery because the testator had the privilege of changing his mind. However, the court preferred to follow the reasoning of Dean Prosser.
"There is no essential reason for refusing to protect such non-commercial expectancies, at least where there is a strong probability that they would have been realized. * * * The problem appears in reality to be one of satisfactory proof that the loss has been suffered, instead of the existence of a ground of tort liability."
190 So.2d at 828-29. The court also relied on the reasoning in McGregor v. McGregor, 101 F. Supp. 848 (D.Colo. 1951); Casternovia v. Casternovia, 82 N.J. Super. 251, 197 A.2d 406 (1964); and Bohannon v. Wachovia Bank & Trust Co., 210 N.C. 679, 188 S.E. 390 (1936), in reaching its conclusion that tortious interference with an expected bequest or gift is an actionable tort.
In Bohannon v. Wachovia Bank & Trust Co., the court found that the plaintiff stated a cause of action by alleging that Laura Bohannon and Maude Trotman had by a conspiracy and false and fraudulent representations deprived him of a share of his grandfather's estate which his grandfather had formed a fixed intention of providing to him and which he would have received but for the wrongful acts of Laura and Maude.
The Restatement (Second) of Torts, Section 774B (1979), also recognizes tortious interference with an expectancy as a valid cause of action. The Restatement provides that "[o]ne who by fraud, duress or other tortious means intentionally prevents another from receiving from a third person an inheritance or gift that he would otherwise have received is subject to liability to the other for loss of the inheritance or gift." The Restatement also provides that there must be proof to a reasonable degree of certainty that the bequest or gift would have been made.
Other sources also recognize the validity of a claim based on tortious interference with an expected gift or bequest. The discussion in Annot., 11 A.L.R.2d 808 (1950), relating to interference with wills, reveals that in general most states provide a remedy for tortious interference with the making of a will, the changing of a will, and the revoking of a will. The annotation refers to several cases which support this view.
The annotation discusses Mitchell v. Langley, 143 Ga. 827, 85 S.E. 1050 (1915), which is factually very similar to the instant case. Georgia Langley brought suit against her sister Cora Mitchell for tortious interference with a gift. The complaint alleged that Georgia and Cora had another sister and a half brother; that the half brother was feeble in body and mind and liable to be influenced; that in 1904 the half brother had taken out a benefit certificate for $3,000 payable at his death to his three half sisters equally; that in 1911 in order to persuade the half brother to change beneficiaries, the defendant began writing letters to her half brother representing that the other two half sisters did not care about him but only cared about his money. She also represented that they refused to pay what was necessary to keep the certificate in force. These representations were knowingly false and maliciously intended to injure the plaintiff. The brother did cancel the old certificate and had a new one issued with the defendant as the sole beneficiary. The half brother died, and the defendant collected. Mrs. Langley filed suit claiming $1,000 damages. She recovered, and the defendant appealed.
The Mitchell court recognized that Mrs. Langley, as a beneficiary, had only an expectancy *802 in the proceeds of the benefit certificate, but held that "[i]t is not necessary in all cases that there should be a vested right in property or a fund in order to have one who fraudulently diverts it from another, who would have received it, declared to be a trustee ex maleficio." 85 S.E. at 1052. A member of a benefit society, by naming a beneficiary, "creates a certain status" and "[t]he fact that this status has not ripened into a vested and irrevocable ownership of the beneficial interest ... does not authorize a third-party to maliciously and fraudulently destroy the status... ." Id. The court affirmed stating that to recover in this type of action it is necessary to show that a benefit would have accrued to the plaintiff and that the conduct of the defendant was fraudulent and was the proximate cause of loss to the plaintiff.
We believe that the foregoing discussion illustrates that the reasoning of diverse courts and other authorities supports the holding in Allen v. Leybourne, and we agree with that reasoning.[1] That a cause of action is new should not bar recovery if a plaintiff can show he has suffered damages due to the tortious conduct of another.
The sources relied on above also demonstrate that, with regard to tortious interference claims, no real distinction exists between gifts of inheritance through a will and gifts through a revocable trust. Both forms of giving create only an expectancy in the beneficiary and, in both forms, the donor has the privilege of changing his mind. The rationale of the court in Mitchell v. Langley is applicable to and derived from cases dealing with wills, and yet the situation in that case involved a benefit certificate. It is the expectancy status to which this theory of liability applies, and both wills and revocable trusts create expectancies.
Appellees' last argument is that appellant is precluded from maintaining this tortious interference action as it is a position inconsistent with that pleaded in a prior will contest and equitable estoppel is applicable. Appellant previously filed a petition for revocation in the probate court claiming lack of testamentary capacity to execute either a will or a trust. Appellees contend that this is inconsistent with appellant's position in this action that Mrs. Obrig had a "fixed intention" of leaving the residue of the trust to appellant.
We find no inherent inconsistency. We do not believe that the position taken by Mrs. Davison in the prior will contest precludes her bringing this tort action against the Feuerherds.
Accordingly, we hold that appellant's complaint does state a cause of action and, therefore, we reverse the trial court's order and remand for proceedings consistent with this opinion. However, as did the court in Mitchell v. Langley, we caution appellant that to recover she must prove to a reasonable certainty that she would have been the beneficiary of the trust but for appellees' malicious interference.
REVERSED AND REMANDED.
BOARDMAN, Acting C.J., and GRIMES, J., concur.
NOTES
[1] Although appellee is correct in stating that there is authority to the contrary, we find the reasoning in the cases cited here more persuasive. But see Lewis v. Corbin, 195 Mass. 520, 81 N.E. 248 (1907).