OPINION OF THE COURT
C. Raymond Radigan, J.
The present claim by Kathleen Russell Taylor against the estate of her mother, Margaret Young, is that her mother fraudulently concealed the true identity of her father, which if she had known would presumably have led her to establish her paternity during her father’s lifetime and thereby inherit a portion of his estate in intestacy.
*302 The facts as outlined by the claimant are that her mother, Margaret Young, was married to a John Russell on or before the year 1932 and thereafter gave birth to two sons, John and George. Some 20 years later, on or before February 20, 1952, Margaret Young and John Russell were divorced. However, sometime prior to the year 1944, Margaret Young commenced a long-term relationship with a Theodore Kessler allegedly resulting in the birth of three daughters, Carol, Mary Ann and the claimant, Kathleen, all of whom were born prior to the divorce between Margaret and John Russell. All of the birth certificates of the three daughters specify John Russell as the father.
Margaret Young and Theodore Kessler never intermarried and Mr. Kessler’s death occurred in 1971. The claimant concedes that she is a nonmarital child and that in addition, she does not qualify as a distributee under EPTL 4-1.2 as in effect on Mr. Kessler’s death in 1971, namely, that there was no order of filiation declaring paternity during the father’s lifetime nor any instrument acknowledging paternity signed by the father and filed with the putative father registry. Rather, the claim is premised as above stated on the fact that the mother’s fraudulent concealment of her true father’s identify prevented her from establishing paternity during her alleged father’s lifetime thereby interfering with her right of inheritance. The present motion for summary judgment seeks to dismiss the claim.
The law of tortious interference with the right of inheritance has essentially been addressed by only one case in New York of any substance, namely, Hutchins v Hutchins (7 Hill 104), an 1845 case in which it was alleged that the defendants, after a will had been made by the decedent devising certain real estate to the plaintiff, conspired with each other to induce the testator to revoke it and effected their objective by means of false and fraudulent representations. The court held that there was no cause of action as the revocation of the will merely deprived the plaintiff of an expected gratuity without interfering with any of his rights. There, the court stated (at 110):
"But the law applicable to the cases referred to proceeds upon the ground that the plaintiff, by the wrongful act complained of, has been deprived of the present, actual enjoyment of some pecuniary advantage. No such damage can be pretended here. At best, the contemplated gift was not to be realized till after the death of the testator, which might not *303 happen until after the death of the plaintiff; or the testator might change his mind, or lose his property.
"In short, the plaintiff had no interest in the property of which he says he has been deprived by the fraudulent interference of the defendant, beyond a mere naked possibility; an interest which might indeed influence his hopes and expectations, but which is altogether too shadowy and evanescent to be dealt with by courts of law.”
Although there are apparently no other New York cases directly on point, the Restatement (Second) of Torts § 774B addresses the intentional interference with an inheritance or gift as encompassing a valid cause of action in the following language: "One who by fraud, duress or other tortious means intentionally prevents another from receiving from a third person an inheritance or gift that he would otherwise have received is subject to liability to the other for loss of the inheritance or gift.”
The Restatement’s commentaries shed further meaning on the nature of the cause of action. Subdivision (d) of the comment states that "An important limitation upon the rule stated in this Section is that there can be recovery only for an inheritance or gift that the other would have received but for the tortious interference of the actor. This means that, as in other cases involving recovery for loss of expectancies * * * there must be proof amounting to a reasonable degree of certainty that the bequest or devise would have been in effect at the time of the death of the testator or that the gift would have been made inter vivos if there had been no such interference.”
The leading case in the description of this expectancy is Mitchell v Langley (143 Ga 827, 85 SE 1050), a case involving a named beneficiary under a policy of insurance who alleged tortious interference by a third person causing a change in the beneficiary designation. There the court stated (supra, 143 Ga, at 836, 85 SE, at 1053): "A bare possibility may not be [protected]. But where an intending donor, or testator, [or insurance holder], has actually taken steps toward perfecting the gift, or devise, or benefit, so that if let alone the right of the donee, devisee, or beneficiary will cease to be inchoate and become perfect, we are of the opinion that there is such status that an action will lie, if it is maliciously and fraudulently destroyed, and the benefit diverted to the person so acting, thus occasioning loss to the person who would have received it.”
*304 The cases which have sanctioned a cause of action for tortious interference with the right of inheritance have been premised on more than as the Mitchell case (supra, 143 Ga, at 836, 85 SE, at 1053) says "[a] bare possibility”. Those expectancies have revolved about particular kinds of interferences such as interference with the execution, alteration or revocation of a will; suppression or destruction of a will and deprivation of inheritance by inducing inter vivos transfers or interference with a gift or other benefit (Annotation, Liability in Damages for Interference with Expected Inheritance or Gift, 22 ALR4th 1229). Here, the claimant’s cause of action is premised on an alleged fraudulent concealment by her mother of the identity of her true father which deprived her of the opportunity to establish paternity during her father’s lifetime and which in turn denied her any inheritance in intestacy. The stretch of the imagination necessary to encompass all of these speculations and conjectures it must be concluded presents nothing more than a "bare possibility” of what might have occurred. In order to give claimant’s "expectancy” any viability, the court must presume that if the claimant had known who her true father was she would have established her paternity and then conjecture that if she had established her paternity that her father would have died intestate. Moreover, there is completely absent the element of Mr. Kessler taking any affirmative action or steps toward perfecting a bequest or ¿ft. His dying intestate completely negatives any action in this regard.
While the New York case of Hutchins v Hutchins (supra, at 110) may not express the majority position at this time, since it involved an actual interference with a presently existing will, nevertheless, the language of the court is particularly apposite; that is, that the claim here is "altogether too shadowy and evanescent to be dealt with by courts of law.”
While the court in prior decisions had indicated that the claim required a hearing, no actual motion to dismiss had been addressed to the claim and the court at the present time withdraws any prior indication of a requirement for a hearing and grants the motion for summary judgment disallowing the claim.