*Darlene Barclay v. Sadie M. Castruccio*, No. 30, September Term, 2019, Opinion by Adkins, J.

**TORT—INTENTIONAL INTERFERENCE WITH AN INHERITANCE OR GIFT—CAUSE OF ACTION:** Maryland recognizes as a cause of action the tort of intentional interference with an inheritance or gift, and adopts the standards set forth in Section 19 of the Restatement (Third) of Torts: Liability for Economic Harm.

**TORT—INTENTIONAL INTERFERENCE WITH AN INHERITANCE OR GIFT—TIMING OF INTERFERENCE:** When one intentionally interferes with an inheritance, one is interfering with the relationship between the testator and a potential legatee. As such, the interference must occur before the end of the relationship, i.e., before the testator's death.

Circuit Court for Anne Arundel County
Case No.: C-02-CV-17-000620
Argued: December 10, 2019

IN THE COURT OF APPEALS
OF MARYLAND

No. 30

September Term, 2019

_____

DARLENE BARCLAY

v.

SADIE M. CASTRUCCIO

_____

Barbera, C.J.
McDonald
Hotten
Getty
Booth,
Adkins, Sally D.
   (Senior Judge, Specially Assigned)
Wilner, Alan M.
   (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Adkins, J.
Getty and Booth, JJ., concur.

_____

Filed: June 30, 2020

Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document
is authentic.



Suzanne C. Johnson, Clerk

We are asked—again—to recognize the tort of intentional interference with an inheritance or gift. Petitioner Darlene Barclay, the residuary beneficiary of the Estate of Dr. Peter A. Castruccio (the "Estate"), alleges that Respondent Sadie M. Castruccio,[1] Peter's[2] widow, maliciously depleted her inheritance by forcing the Estate's expenditure of attorneys' fees to defend against Sadie's groundless lawsuits and efforts to initiate criminal charges. Litigation surrounding the Estate has made its way to the Court of Special Appeals eleven times, and this is its second time in front of us.

**FACTS AND LEGAL PROCEEDINGS**

*Background*

The background facts—as stated in Darlene's complaint—illustrate the highly contentious nature of this litigation. The Castruccios had several business ventures together, and were wealthy. Darlene began working for Peter in 1984, before transitioning to working with the Castruccios' real estate business in the early 1990s, where she worked until Peter's death in 2013. According to the complaint, Peter, who had no children of his own, regarded Darlene as his daughter.

Sadie did not share the same affection for Darlene. For the final sixteen months of Peter's life, Sadie prevented Darlene from entering the family home, and allegedly refused

---

[1] This appeal was argued before the Court on December 10, 2019. Sadie Castruccio died on March 4, 2020.

[2] Hereinafter we refer to the decedent, Ms. Castruccio, and Ms. Barclay by their first names. We do so for clarity and mean no disrespect by this informality.

to let Peter visit Darlene at the office. When Peter passed away, Sadie made clear that Darlene was not welcome at the funeral.

According to Darlene, Peter disliked his wife's extended family, and "did not want his share of [their] joint estate to pass to Sadie's extended family."[3] He also did not want his share to pass to his extended family (except for a niece), and so he unsuccessfully attempted to convince Sadie to participate in a joint estate plan. Sadie, however, refused to participate in the planning, so Peter went forward with a plan to dispose of his portion of the estate. To further this goal, the Castruccios divided their joint assets, including eight pieces of real property, through seven deeds. After these conveyances, each spouse ended up with various solely-owned property, roughly equal in value.

Peter signed his last will and testament on September 29, 2010 (the "Will"), bequeathing $800,000 to Darlene, and $100,000 each to two other individuals. The remainder of the Estate was left to Sadie, provided that she: (a) survived Peter; (b) wrote and executed a will prior to Peter's death; and (c) filed that will with the Register of Wills in Anne Arundel County. If she failed to fulfill those terms, then the Will named Darlene as the residuary beneficiary.

Peter died on February 19, 2013, at which point Sadie had not fulfilled the Will's final requirement. Darlene, therefore, inherited the residuary Estate, worth approximately $6.7 million.[4]

---

[3] The Castruccios had no living children or descendants.

[4] The Estate's current value is unknown, but—due to attorneys' fees and litigation costs—it is considerably less than it was at the time of Peter's death.

Darlene claims that Sadie began interfering soon after Peter's death, "fil[ing] seven lawsuits in order to overturn [Peter's] estate plan," and "try[ing] to bring criminal charges against Darlene" by filing a 21-page memorandum with the Office of the State's Attorney for Anne Arundel County. Sadie brought: (1) a caveat action ("*Caveat*"), where she claimed that the Will was the product of fraud or undue influence; (2) an action to quiet title ("*Deeds*"), challenging the seven deeds and alleging that her signature on the deeds was forged; (3) a will construction action, despite knowing that she was not the residuary beneficiary of the Estate; (4–5) two "unsuccessful attempts" to have Peter's attorney, John Greiber, removed as the Estate's personal representative; (6) a negligence action ("*Notary*") against Darlene for her notarization of the seven deeds; and (7) a challenge of the attorneys' fees and litigation costs incurred by the Estate.

*Procedural Posture*

In February 2017, Darlene filed the present complaint, alleging intentional interference with an expectancy, malicious use of process, and abuse of process in the Circuit Court for Anne Arundel County. After a hearing, the circuit court granted Sadie's motion to dismiss. Darlene's appeal only challenged the dismissal of the intentional interference with an expectancy claim, which the Court of Special Appeals affirmed, holding that "the complaint cannot support a claim for interference with expected inheritance, even if we were to recognize one." *Barclay v. Castruccio*, No. 2488, Sept.

3

Term, 2017, 2019 WL 1308136, at \*5 (Md. Ct. Spec. App. March 21, 2019). We are

presented with the following questions:

1. Did the Circuit Court err when it ruled that the cause of action for intentional interference with an inheritance is not a cause of action under Maryland law?

2. Did Petitioner adequately plead facts to succeed on a claim of intentional interference with an inheritance?

For the reasons set forth below, we recognize the tort of intentional interference with

an inheritance or gift, but hold that the allegations in Darlene's complaint are insufficient

to survive a motion to dismiss.

## STANDARD OF REVIEW

We review a trial court's grant of a motion to dismiss, without deference, to

determine whether it was legally correct. *Balfour Beatty Infrastructure, Inc. v. Rummel*

*Klepper & Kahl, LLP*, 451 Md. 600, 609 (2017). "In considering the legal sufficiency of

a complaint to allege a cause of action for tortious interference, we must assume the truth

of all relevant and material facts that are well pleaded and all inferences which can be

reasonably drawn from those pleadings. Mere conclusory charges that are not factual

allegations may not be considered." *Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 121 (2007)

(cleaned up). The granting of a motion to dismiss is proper only if "the allegations and

4

permissible inferences, if true, would not afford relief to the plaintiff, i.e., the allegations do not state a cause of action." *Id.* at 121.

## DISCUSSION

Darlene argues that we should recognize the tort of intentional interference with an inheritance or gift, and adopt its elements as stated in Section 19 of the Restatement (Third) of Torts: Liability for Economic Harm.[5] She asserts that the facts as stated in her complaint are sufficient to maintain the cause of action.

Maryland's history with the tort of intentional interference with an inheritance is not *tabula rasa*. We first considered whether to recognize it in *Anderson v. Meadowcroft*, 339 Md. 218, 224 (1995), in which we noted that the Restatement (Second) of Torts classified the tort as an extension of a cause of action well-settled in the lawbooks of Maryland—the tort of intentional interference with economic contractual relations.

In *Anderson*, the decedent, Peter Paul Meadowcroft, left most of his estate to his cousin Francis as the residuary beneficiary; he also named Francis as the estate's personal representative. *Anderson*, 339 Md. at 220. The plaintiff, Meadowcroft's daughter Maxine, alleged that under her father's previous will she would have received one-third of the estate. She argued that after she moved out-of-state, her father's health began to deteriorate and "he fell under the influence of Francis X. Meadowcroft," who used "his influence and

---

[5] Darlene's brief refers to Section 18 of the Restatement (Third) of Torts: Liability for Economic Harm (Ten. Draft No. 3, March 7, 2018). Since its filing, the American Law Institute has renumbered Section 18 to Section 19, approved Tentative Draft No. 3, and published Restatement (Third) of Torts: Liability for Economic Harm (AM. LAW. INST. 2020). Hereinafter all references to the Third Restatement refer to the Restatement (Third) of Torts: Liability for Economic Harm.

position as an attorney . . . to unduly influence, coerce, and persuade" her father to change his will. *Id.* at 221. Meadowcroft's updated will left most of his assets to Francis, and none to his daughter. *Id.*

The complaint contained two counts, conversion and fraud. The circuit court granted Francis's motion to dismiss both counts. *Id.* at 221. Before this Court, Anderson sought to reframe the issue to be whether the complaint states a cause of action for tortious interference with an inheritance. We analyzed the tort as defined in Section 774B of the Second Restatement of Torts: "One who by fraud, duress or other tortious means intentionally prevents another from receiving from a third person an inheritance or gift that he would otherwise have received is subject to liability to the other for loss of the inheritance or gift." *Id.* at 222. Recognizing that we "have adopted the tort of wrongful or malicious interference with economic relations," we cautioned that we had not "expand[ed] the tort to apply to interference with gifts or bequests, nor, therefore, have we considered the compatibility of such an expansion with caveat proceedings." *Id.* at 224. Ultimately we declined to "decide whether or how far to extend our law to embrace this cause of action because . . . the complaint did not adequately allege undue influence, which form[ed] the basis for [the intentional interference claim]." *Id.* at 227 (cleaned up).

After *Anderson*, the Court of Special Appeals took up the issue in *Geduldig v. Posner*, 129 Md. App. 490, 505–09 (1999), in which the claimants sought to set aside a will and revocable trust, impose a constructive trust, and be awarded damages. They alleged fraud and undue influence exercised upon the decedent. The intermediate appellate court considered *Anderson*, and decided that this Court would recognize the tort under

6

certain circumstances. *Id.* at 509. It concluded that those circumstances were not present in *Geduldig*. *Id.*

A brief review of our jurisprudence on the related, umbrella tort—interference with contractual or economic relations—is helpful. That cause of action first appeared over a century ago. *See Willner v. Silverman*, 109 Md. 341 (1909) (recognizing intentional interference with an economic relationship). More modern cases include *K&K Mgmt., Inc. v. Lee*, 316 Md. 137 (1989) (analyzing intentional interference with prospective contracts), *Alexander & Alexander Inc. v. B. Dixon Evander & Assocs., Inc.*, 336 Md. 635 (1994) (successful wrongful interference claims not involving a contract must include tortious conduct); *Macklin v. Robert Logan Assocs.*, 334 Md. 287 (1994) (analyzing the wrongful interference with a contract).

When one of these torts applies, we have said that the interference must be "independently wrongful or unlawful, quite apart from its effect on the plaintiff's business relationships." *Alexander*, 336 Md. at 657. We defined "wrongful or unlawful acts" as common law torts and "violence or intimidation, defamation, injurious falsehood or other fraud, violation of criminal law, and the institution or threat of groundless civil suits or criminal prosecutions in bad faith." *Anderson*, 339 Md. at 224. "Groundless civil suits" is important for this case, because, as discussed *infra*, it is the predicate wrongful act relied on by Darlene in her complaint.

We stated in *Alexander* that "Maryland recognizes the tort action for wrongful interference with contractual or business relationships in two general forms: inducing the breach of an existing contract, and more broadly, maliciously or wrongfully interfering

7

with economic relationships." *Id.* at 650 (cleaned up). Application of this tort to inheritances or gifts would fit in the broader category of malicious or wrongful interference with economic relationships. The relationship must be between three parties, "the parties to a contract or other economic relationship and the interferer." *K & K*, 316 Md. at 154. *See also Blondell v. Littlepage*, 413 Md. 96 (2010) (partner could not tortiously interfere with co-partner's contractual relations with clients because partner was also party to the contract).

As indicated earlier, Darlene urges us to adopt the intentional interference with an inheritance tort as stated in Section 19 of the Third Restatement of Torts, which provides:

> (1) A defendant is subject to liability for interference with an inheritance or gift if:
>   (a) the plaintiff had a reasonable expectation of receiving an inheritance or gift;
>   (b) the defendant committed an intentional and independent legal wrong;
>   (c) the defendant's purpose was to interfere with the plaintiff's expectancy;
>   (d) the defendant's conduct caused the expectancy to fail; and
>   (e) the plaintiff suffered injury as a result.
>
> (2) A claim under this Section is not available to a plaintiff who had the right to seek a remedy for the same claim in a probate court.

8

She proposes this definition rather than that offered by the Restatement (Second) because it: "provides a better articulation of the standard of liability."[6]

Sadie refuses to engage in a debate over the merits of Maryland's adopting the tort or its best formulation. Rather, she strikes at the heart of Darlene's complaint, arguing that it "contains no allegation whatsoever that [Sadie] interfered in any way with Dr. Castruccio's designation of [Darlene] as the beneficiary of his estate," and does not allege "any wrongful or tortious act." In other words, she denies that her alleged actions caused the inheritance to fail.

Before we evaluate Sadie's arguments about the specifics of Darlene's claim, we first address the more general issue of whether to adopt interference with an inheritance or gift ("inheritance interference"). We review other states' decisions for guidance.

*Adoption of Inheritance Interference*

Eighty years ago, North Carolina was one of the first states to adopt the tort of inheritance interference, in the seminal case of *Bohannon v. Wachovia Bank & Tr. Co.*, 188 S.E. 390 (N.C. 1936).[7] The plaintiff, the testator's grandson, alleged that his grandmother and aunt had, by false representations to his grandfather, changed his

---

[6] Darlene further states that the Restatement (Third) is "designed to protect, not trample on, already existing remedies found in probate and equity," "is more compatible with this Court's jurisprudence than Restatement (Second)," and "is meant to provide a remedy in the rare situations where an aggrieved party would otherwise go uncompensated." Darlene views this tort as a "gap filler meant to ensure that the aggrieved party has the access to relief."

[7] Only Georgia (*Mitchell v. Langley*, 85 S.E. 1050 (Ga. 1915)) and Massachusetts (*Lewis v. Corbin*, 81 N.E. 248 (Mass. 1907)) recognized the tort before North Carolina.

9

grandfather's "fixed intention" to leave a large share of his estate to him. *Id.* at 391. The North Carolina Supreme Court first considered a bedrock principle of tort law that underlies interference torts generally:

> The principle is clearly stated by Justice Brewer in *Angle v. Chicago, St. Paul, etc., Ry. Co.*, 151 U.S. 1, 13, wherein he says: 'It has been repeatedly held that, if one maliciously interfere in a contract between two parties, and induces one of them to break that contract, to the injury of the other, the party injured can maintain an action against the wrongdoer.' This is but a recognition and application of the principle: '**That whenever a man does an act which, in law and in fact, is a wrongful act, and such an act as may, as a natural and probable consequence of it, produce such an injury, an action on the case will lie**.'

*Id.* at 393 (cleaned up) (emphasis added). Recognizing that more difficult issues of proof might arise when there is no contract, but only an expectation of a contract, did not deter the North Carolina Supreme Court:

> It is true that the right is more difficult to establish-requiring another link in the process of proof-than where the contract has been entered into. When the parties have entered into a contract, the terms of which are fixed, the plaintiff is only required to show the malicious interference and the damage proximately resulting; whereas, if the ground of complaint is that he was about to make a contract, he is required to go further and show that he was not only 'about to,' but would, but for the malicious interference of defendants, have entered into the contract.

*Id.* (cleaned up).

The court had no trouble with the logic of the next step, i.e., extending the tort of intentional interference with economic relations to inheritance cases, holding that "[i]f the plaintiff can recover against the defendant for the malicious and wrongful interference with

10

the making of a contract, we see no good reason why he cannot recover for the malicious and wrongful interference with the making of a will." *Id.* at 394. The takeaway from this older case is simply its expression of how closely-tied an inheritance interference claim is to the more widely recognized interference with contract, or with prospective economic relations.

The tort of intentional interference with an inheritance or gift has been recognized by courts in about half the states, including most of those that have considered the issue.[8] *See* Restatement (Third) of Torts § 19 rep. n. a (Scope and rationale). *See also* DAN B. DOBBS, PAUL T. HAYDEN & ELLEN M. BUBLICK, THE LAW OF TORTS § 642 (2d ed. 2011) ("Most courts addressing the issue have recognized a cause of action against defendants who prevent the plaintiff from receiving an inheritance or gift she would otherwise have

---

[8] *See, e.g.*, *DeWitt v. Duce*, 408 So.2d 216 (Fla. 1981); *In re Estate of Ellis*, 923 N.E.2d 237 (Ill. 2009) (beneficiary allegedly unduly influenced testator in formation of new will); *Frohwein v. Haesemeyer*, 264 N.W.2d 792 (Iowa 1978) (beneficiary to the testator's first will claimed that the beneficiary to the subsequent, probated will defrauded him by tortiously causing the testator to execute the subsequent will); *Minton v. Sackett*, 671 N.E.2d 160 (Ind. Ct. App. 1996); *Plimpton v. Gerrard*, 668 A.2d 882 (Me. 1995); *Firestone v. Galbreath*, 616 N.E.2d 202 (Ohio 1993); *Allen v. Hall*, 974 P.2d 199 (Or. 1999); *Barone v. Barone*, 294 S.E.2d 260 (W. Va. 1982).

received, provided the defendant uses undue influence, duress, or tortious means such as fraud or murder.").[9]

Previously we declined to decide this issue, but today we elect to do so for the guidance to trial courts and litigants. We are persuaded in part by the logic of the North Carolina Supreme Court in *Bohannon*. As in North Carolina, it is settled law in Maryland that one may recover for wrongful interference with contractual or economic relations. *See Macklin*, 334 Md. at 301 (collecting cases). Logically, interfering with an expected inheritance is just a species of interference with economic expectancy, although we recognize it has an added complication, more fully discussed below—the need to protect the special jurisdiction of the probate court. *See* Restatement (Third) of Torts § 19 cmt. a ("This section recognizes a liability that may be considered a special case of the rule recognized in § 18 (Interference with Economic Expectation). . . . The general rationale for liability here is the same as that found in § 18."). As more fully explained below, we see no principled reason to deny liability for inheritance interference when we have recognized liability for other instances of wrongful interference with economic expectancy.

---

[9] A handful of states have specifically rejected the tort. *See Garruto v. Cannici*, 936 A.2d 1015, 1021 (N.J. Sup. Ct. App. Div. 2007) ("Addressing an issue that is novel in this State, we now determine that, although an independent cause of action for tortious interference with an expected inheritance may be recognized in other circumstances, it is barred when, as here, plaintiffs have failed to pursue their adequate remedy in probate proceedings of which they received timely notice."); *Manon v. Orr*, 856 N.W.2d 106, 111 (Neb. 2014); *Vogt v. Witmeyer*, 665 N.E.2d 189 (N.Y. 1996); *Stewart v. Sewell*, 215 S.W.3d 815, 827 (Tenn. 2007); *Archer v. Anderson*, 556 S.W.3d 228 (Tex. 2018); *Economopoulos v. Kolaitis*, 528 S.E.2d 714 (Va. 2000).

"Tortious interference offers an opportunity for litigants to recover directly from a bad actor, rather than from an estate." Rebecca M. Murphy & Samantha M. Clarke, *A New Hope: Tortious Interference with an Expected Inheritance in Rhode Island*, 22 ROGER WILLIAMS U. L. REV. 531, 567 (2017). In arriving at that observation, Murphy and Clarke focus on the Florida decision, *Dewitt v. Duce*, which recognized the following:

> Probate can strike from the will something that is in it as a result of fraud but cannot add to the will a provision that is not there nor can the probate court bring into being a will which the testator was prevented from making and executing by fraud.

*Dewitt*, 408 So.2d 216, 219 n.7 (Fla. 1981) (quoting 1 W. BOWE & D. PARKER, PAGE ON WILLS § 14.8, at 706-07 (1960). They also observe that "probate remedies are hardly adequate where a will contest would never enable a litigant to probate a favorable will because . . . such a will never existed." Murphy & Clark, at 566. As further explained, remedies in probate can also be inadequate:

> [I]f a testator executes a will benefiting two heirs, and one heir later convinces the testator to change the will in his favor using fraud, at the testator's death, the malfeasant heir can only benefit. The original will still benefits both heirs, so even if the later will is voided through a will contest because it was procured by fraud, the bad actor can still take under the will. Worse still, the bad actor's attorneys' fees will generally be paid by the estate. Arguably, then, the tortfeasor risks nothing by engaging in tortious conduct that interferes with a third party's expected inheritance.

13

*Id.* at 568.[10] In our view, the likelihood that the bad actor's attorneys' fees may be paid by the estate, and the minimal risk to the bad actor in the probate proceeding are significant considerations favoring adoption of the tort. The damages potentially recoverable by a successful plaintiff will likely shift the incentives motivating a bad actor away from bad conduct.

Some cases have addressed concerns about this tort's potential interference with probate jurisdiction. *See, e.g.*, *Garruto v. Cannici*, 936 A.2d 1015, 1021 (N.J. Sup. Ct. App. Div. 2007); *In re Estate of Ellis*, 923 N.E.2d 237, 241 (Ill. 2009). This concern is plainly and fully addressed in Section 19(2) of the Third Restatement. Unlike its predecessor, this section includes an explicit directive that the tort "is not available to a

---

[10] This illustration is consistent with the Third Restatement's § 19 comment a example of an actionable tort:

> A defendant may commit a wrong against a third party—an act of fraud, for example, that prevents the third party from revising a will. The plaintiff may be the party most injured by the wrong, and the defendant may have intended that injury; the plaintiff nevertheless cannot recover from the defendant for fraud directly because the fraud was committed against someone else. The immediate victim may have died by the time the fraud is discovered, and the victim's executor may have no reason to pursue the defendant because a successful suit would not increase the size of the estate.

14

plaintiff who had the right to seek a remedy for the same claim in a probate court."[11]  As explained in comment c, a probate court "is the appropriate forum for determining whether a will is valid."  Comment c also clarifies that "a proceeding in probate is considered available, for purposes of [§ 19], even if it offers less generous relief than would be attainable in tort."

*Claim of Interference Post-Relationship*

As we described above, Darlene's claim is based on the serial litigation between Sadie and her or the Estate. She relies on the "institut[ion] [of] groundless civil suits in bad faith" as the predicate for showing Sadie's independently wrongful action.  Maryland cases have repeatedly included "the institution or threat of groundless civil suits or criminal prosecutions in bad faith" as qualifying wrongful acts, although most do not apply the term. *Alexander*, 336 Md. at 657; *see Travelers Indem. Co. v. Merling*, 326 Md. 329, 343 (1992); *K&K*, 316 Md. at 155–70; *Ronald M. Sharrow, Chartered v. State Farm Mut. Auto. Ins. Co.*, 306 Md. 754, 765 (1986); *Natural Design, Inc. v. Rouse Co.*, 302 Md. 47, 71–74

---

[11] Reporter's Note a to § 19 of the Third Restatement explains that:

> This section emphasizes the importance of limiting tort claims to avoid interference with other mechanisms for resolving disputes about inheritances.  Section 774B of the Restatement Second, Torts . . . did not contain a similar emphasis. . . . Decisions applying § 774B have recognized the problem, however, and have sought to limit the tort claim accordingly.  This section follows those authorities.

15

(1984); *Stannard v. McCool*, 198 Md. 609, 616 (1951); *Knickerbocker Ice Co. v. Gardiner Dairy Co.*, 107 Md. 556, 566 (1908).[12]

Before we delve further into considering groundless litigation as the predicate wrongful act, we shall address a threshold issue raised by Sadie. As Sadie points out, "[t]he Complaint . . . contains no allegation whatsoever that [Sadie] interfered in any way with Dr. Castruccio's designation of [Darlene] as the beneficiary of his estate." In other words, the alleged interference came after Peter's death. Darlene cites no cases, nor have we found any, that were predicated, as this one is, *strictly* on wrongful acts that occurred *after* the relationship had ended—in this case by Peter's death.

To be sure, when we consider the elements of interference with economic expectations and inheritance interference, there is no *explicit* requirement that the wrongful act(s) constituting the interference occur at a specific time or include personal contact by the wrongful actor with the third party.[13] A review of the Restatement, and precedent from inside and outside of Maryland, however, persuades us that, at the time of the alleged interference, there must be something to interfere with, i.e., a current or prospective relationship or contract.

---

[12] Darlene's complaint contains numerous allegations to support her claim of groundlessness. Among other things, she alleges that Sadie: (1) had been accepting the benefits of the deeds transactions for years when she filed *Deeds*; (2) never put forth any facts to substantiate the allegations made in *Caveat*; (3) filed *Notary* as an attempt to relitigate *Deeds*; (4) has stated on multiple occasions that she would rather have the Estate be depleted by attorneys' fees as a result of litigation that have it go to Darlene; and (5) "has stated under oath that she wants Darlene killed or put in jail."

[13] Ironically, in this case, the "third party" would be Peter, Sadie's husband.

The Third Restatement delineates the interference with an economic expectation as follows:

> A defendant is subject to liability for interference with economic expectation if:
> (a) the plaintiff had a reasonable expectation of economic benefit from a relationship with a third party;
> (b) the defendant committed an independent and intentional legal wrong;
> (c) the defendant intended to interfere with the plaintiff's expectation;
> (d) the defendant's wrongful conduct caused the expectation to fail; and
> (e) the plaintiff suffered economic loss as a result.

Restatement (Third) of Torts § 18.[14]  The Restatement does not focus on the timing of the interference, except in the sense that the interference must cause the injury.  Nevertheless, careful examination of the illustrations offered by the Restatement (Third) reveal that the core principle underlying the interference tort generally is that the defendant shall have taken some wrongful action that interferes with a contract, a business relationship or with

---

[14] Section 774B of the Second Restatement is more general, and provides:

> One who intentionally and improperly interferes with another's prospective contractual relation (except a contract to marry) is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of
> (a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or
> (b) preventing the other from acquiring or continuing the prospective relation.

17

a testator's or donor's relationship with the plaintiff. The key word is *relationship*.[15] Of course, Darlene had a relationship with Peter that motivated his bequest, but the issue here is whether the alleged interference must act directly upon Peter, causing him to change his will during his lifetime—when the relationship was intact.

Comment b to Restatement (Third) of Torts Section 19 suggests that the defendant must interfere with an ongoing relationship, and therefore groundless litigation post-death will not suffice. In describing "independent legal wrongs," comment b explains that these "may include acts recognized as wrongful in equity, such as the use of duress or exertion of undue influence." In both such instances—duress and fraud—the plaintiff has suffered injury because the defendant, during the lifetime of the testator, interferes with the relationship that otherwise would bestow a benefit upon the plaintiff.

Section 19 of the Restatement (Third) of Torts provides three illustrations that highlight the focus on the relationship. In Illustration 1, the alleged wrongful act is the defendant daughter knowingly interfering with her father's intent to revise his will to include his son (who was previously excluded) by checking her father into a hospital and telling the father's lawyer that father was not sufficiently lucid to execute a will. Restatement (Third) of Torts § 19 cmt. b, illus. 1. The daughter interfered with her father's

---

[15] In her Concurring Opinion, Judge Booth submits that a "relationship" is not required in the inheritance interference tort set forth in § 19 of the Third Restatement. *See* Con. Slip Op. at 3 n.1. We disagree and view it as essential and fully consistent with the Third Restatement. Comment a to § 19 states, "[t]his Section recognizes a liability that may be considered a special case of the rule recognized in § 18 (Interference with Economic Expectation). . . . The general rationale for liability here is the same as that found in § 18." Section 18 identifies interference with a relationship as a requisite for the tort.

desire to make a bequest to his son, and thus interfered with their relationship. The son may proceed against the daughter in tort under § 19 based on interference occurring *during* the father's lifetime.

In Illustration 5, the father's sister fraudulently induces him to revoke his original designation of his son as beneficiary of a life insurance policy, substituting the sister instead. The son has a cause of action against his aunt based on interference during his father's lifetime. Restatement (Third) of Torts § 19 cmt. e, illus. 5. In Illustration 6, a daughter was disinherited when her mother's caretaker persuaded the mother to amend her revocable trust shortly before her death, making the caretaker the sole beneficiary. The daughter has a cause of action against the caretaker. Restatement (Third) of Torts § 19 cmt. e, illus. 6. In all three illustrations, the plaintiff was injured because the defendant interfered with his or her relationship with the testator. We do not have that here, because the pertinent relationship is Peter and Darlene's, and that relationship was intact at the time of his death, when his bequest to her became final.[16]

---

[16] In Illustration 2, a nephew who was the named beneficiary of his uncle's entire estate, on learning that his uncle intended to create a new will, dividing the estate between his nephew and niece, urged his uncle not to do so, and enlisted several of his uncle's friends to join in the effort. Because the uncle was competent when he decided not to make the new will, and neither the nephew nor the friends used wrongful means, the niece would have no claim under § 19. Again, though, the dispute related to the niece's relationship with her uncle during his lifetime.

Illustrations 3 and 4 both address § 19(2), which provides that "[a] claim under this Section is not available to a plaintiff who had the right to seek a remedy for the same claim in a probate court." Neither is useful for gaining insight into the validity of Darlene's complaint. Both involved will revisions disinheriting, wholly or partially, a family member.

Maryland interference cases similarly involve interference with ongoing or prospective relationships.[17] *See Anderson* and *Geduldig* (in both, the alleged interference occurred during the testator's lifetime); *Berry & Gould, P.A. v. Berry*, 360 Md. 142, 153 (2000); *Thacker v. City of Hyattsville*, 135 Md. App. 268 (2000). The interference in *Berry & Gould* was with a prospective economic relationship, where a retiring physician, Berry, had a dispute with his former professional association ("P.A.") about whether he could sell his patient list. After the P.A. sent Berry a letter threatening a breach of contract suit if he sold the list, Berry filed suit, believing this threat of litigation impeded a potential sale. *Id.* at 149. Despite no actual purchaser being identified, it was assumed that there existed a class of physicians who likely would be interested in purchasing a list of Berry's patients, and therefore Berry had a prospective relationship with that class. *Id.* at 153. And indeed, in *Thacker*, the Court of Special Appeals rejected an interference claim in part because the plaintiff failed to allege interference with a relationship: "Plaintiffs have not alleged in the complaint that any particular contract or relationship was interfered with, much less any allegation or proof of wrongful interference or intent to interfere." *Id.* at 316. We have found no interference case in Maryland in which the alleged interference occurred after the relationship had ended, as it did here.

---

[17] The tort of intentional interference with economic relations "pertains to prospective business relations, or to contracts terminable at will." *Carter v. Aramark Sports & Entm't Servs., Inc.*, 153 Md. App. 210, 240–41 (2003) (alleged interference with the plaintiff's "at-will" employment). *See also Friedman & Fuller, P.C. v. Funkhouser*, 107 Md. App. 91 (1995) (interference claim by former employer against former employee and his new employer claiming loss of its customers survived summary judgment).

20

To test our view, we searched widely in other jurisdictions for a successful interference claim predicated on an interference with a relationship other than a prospective or then ongoing relationship, but found none.[18] *See e.g.* Restatement (Third) § 18, Annot.; Restatement (Second) § 774B, Annot. *See also* Harvey S. Perlman, *Interference with Contract and Other Economic Expectancies: A Clash of Tort and Contract Doctrine*, 49 U. CHI. L. REV. 61, 61 (1982) ("Since [*Lumley v. Gye*, 2 El. & Bl. 216, 118 Eng. Rep. 749 (Q.B. 1853)], the interference tort has been applied even where the interference is directed at an unenforceable contract or a relationship involving only an expectancy not yet formalized into a contract.").[19]

We shall conclude, therefore, that the interference alleged must be with an ongoing or prospective relationship. That crucial relationship is absent in Darlene's claim, because the alleged interference occurred after Peter died. Serial frivolous litigation might have

---

[18] *See, e.g.*, *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So.2d 812, 815 (Fla. 1994) (a relationship with past customers is not one upon which a claim for tortious interference can be based); *James v. MacDonald*, 712 A.2d 1054 (Me. 1998) ("Interference with an advantageous relationship requires the existence of a valid contract or prospective economic relationship . . . ."); *Trau-Med of America, Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 701 (Tenn. 2002) (liability should be imposed on the interfering party provided that the plaintiff can demonstrate "an existing business relationship" or "a prospective relationship with an identifiable class of third persons"); *Hawaii Medical Ass'n v. Hawaii Medical Service Ass'n, Inc.*, 148 P.3d 1179, 1218 (Haw. 2006) (same); *Harvey v. Ute Indian Tribe of Uintah and Ouray Reservation*, 416 P.3d 401, 425 (Utah 2017) (same).

[19] In *Lumley v. Gye*, 2 El. & Bl. 216, 118 Eng. Rep. 749 (Q.B. 1853), the relationship was ongoing—between the concert hall owner and the singer who enabled the owner to profit by selling tickets to the event. There are many federal cases asserting tortious interference, including ones predicated on alleged groundless litigation, but our extensive, albeit non-exhaustive, search revealed none in which the groundless litigation did not itself injure an ongoing economic relationship.

interfered with Darlene's eventual receipt of her inheritance because it was reduced by attorneys' fees, but that is not the same as interfering with her relationship with Peter. At best, she might have a claim for such fees under Maryland Rule 1-341.[20]

We appreciate that groundless litigation can cause injury with its prohibitive cost and extensive delay and have seriously considered under what circumstances this might constitute grounds for an interference tort, and whether it could overcome the timing issue. *Berry & Gould* is the only Maryland case in which "groundless litigation" (or the threat of same) was the factual predicate considered by the Court as the basis for an interference claim. The Court considered whether the P.A.'s threat of suit interfered with Berry's prospective sale, but eventually rejected the theory on the grounds that the letter threatening litigation was reasonable, i.e., the threatened litigation would not have been groundless. *Id.* at 154.

---

[20] Rule 1-341, in relevant part, states:

> (a) In any civil action, if the court finds that the conduct of any party in maintaining or defending any proceeding was in bad faith or without substantial justification, the court, on motion by an adverse party, may require the offending party or the attorney advising the conduct or both of them to pay to the adverse party the costs of the proceeding and the reasonable expenses, including reasonable attorneys' fees, incurred by the adverse party in opposing it.

Any Rule 1-341 claim, of course, could be precluded by final decisions denying fees during prior litigation.

22

Lest we dismiss too readily this claim for an interference tort based on groundless litigation, we also looked at other jurisdictions to see if there are any cases that recognize an interference tort, either with economic relations or inheritance or gift, based on groundless litigation *after* the end of the relationship.[21] We found none.

In the context of a claim for interference with an expected inheritance, we need to be especially cautious about relying on post-death groundless litigation to meet the independent wrong requirement. To be sure, it is troubling to see the costs of litigation consume the assets of an estate. But sometimes—even often—undue influence is exercised upon an elderly testator. The plaintiff who challenges the will—such as a distant-living

---

[21] *See, e.g.*, *Hamann v. Carpenter*, 937 F.3d 86, 93 (1st Cir. 2019) (applying Massachusetts law, the plaintiff must show "that he had an advantageous relationship with a third party (e.g., a present or prospective contract or [business] relationship)"); *In re IBP Confidential Bus. Documents Litig.*, 755 F.2d 1300 (8th Cir. 1985), *on reh'g*, 797 F.2d 632 (8th Cir. 1986) (diversity case applying Iowa law); *Blake v. Levy*, 464 A.2d 52 (Conn. 1983); *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 791 P.2d 587, 595 (Cal. 1990) (extensive discussion of federal and state cases); *see also* Rebecca M. Murphy & Samantha M. Clarke, *A New Hope: Tortious Interference with an Expected Inheritance in Rhode Island,* 22 ROGER WILLIAMS U. L. REV. 531 (2017).

descendant—faces a heavy and difficult  burden of proof,[22] and despite wrongful acts by the will beneficiary, may not prevail.  We are reluctant to adopt a cause of action that permits the wrongful actor to bring a suit carrying the potential for the full panoply of tort damages against the descendant when there was no interference with a relationship, i.e., when the interference, consisting of groundless litigation, occurred after the death of the decedent.  To do so would discourage legitimate challenges to wills or gifts on the basis of

---

[22] Regarding proof of duress, we have said that the burden is a heavy one:

> [T]he undue influence which will avoid a will must be an unlawful influence, on account of the manner and motive of its exertion, and must be exerted **to such a degree as to amount to force or coercion, destroying free agency;** and there must be satisfactory proof that the will was obtained by this coercion, or by importunities which could not be resisted, so that the motive was tantamount to force or fear.  It is not enough to show a mere suspicion that the will was procured by undue influence exercised and practiced upon the testator or even that a person had the power unduly to overbear the will of the testator but it must appear that the power was actually exercised, and that by means of its exercise the supposed will was produced.

*Zook v. Pesce*, 438 Md. 232, 249 (2014) (cleaned up) (emphasis in original).  Regarding proof of incapacity, the burden is also difficult:

> The burden is imposed on the person challenging the instrument to prove a **lack** of capacity.  The law presumes that every man is sane and has capacity to make a valid will, and the burden of proving the contrary rests upon those who allege that he lacked mental capacity. Moreover, in the absence of proof of prior permanent insanity, it must be shown that the testator was of unsound mind at the time the will was executed in order to overcome the presumption of sanity.

*Id.* at 246 (cleaned up) (emphasis in original).

undue influence or duress. *Cf. One Thousand Fleet Ltd. P'ship v. Guerriero*, 346 Md. 29, 37 (1997) ("Public policy requires that citizens be free to resort to the courts to resolve grievances without fear that their opponent will retaliate with a malicious use of process lawsuit against them.").[23] We therefore decline to extend the interference with inheritance tort to these facts.

### CONCLUSION

In sum, we recognize the tort of intentional interference with a prospective gift or inheritance, and adopt the standards set forth in Section 19 of the Third Restatement of Torts. Applying those standards, and guided by cases decided both before and after the publication of the Restatement (Third) of Torts, we conclude that dismissal of Darlene's claim was proper because the predicate harm, groundless litigation against the Estate and Darlene personally, occurred after Peter's death. For these reasons, we affirm the judgment of the Court of Special Appeals.

> **JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONER.**

---

[23] *One Thousand Fleet Ltd. P'ship v. Guerriero*, 346 Md. 29, 37 (1997) involves a claim for malicious abuse of process, not interference with prospective relations, but both torts utilize the requirement that the underlying lawsuit be brought without probable cause.

25

Circuit Court for Anne Arundel County
Case No.: C-02-CV-17-000620
Argued: December 10, 2019

IN THE COURT OF APPEALS

OF MARYLAND

No. 30

September Term, 2019

DARLENE BARCLAY

v.

SADIE M. CASTRUCCIO

Barbera, C.J.
McDonald
Hotten
Getty
Booth
Adkins, Sally D.
  (Senior Judge, Specially Assigned)
Wilner, Alan M.
  (Senior Judge, Specially Assigned),

JJ.

Concurring Opinion by Booth, J.,
which Getty, J., joins.

Filed: June 30, 2020

Respectfully, I concur. I agree with the Majority opinion's outcome and would affirm the judgment of the Court of Special Appeals. Like the Majority, I would recognize the tort of tortious interference with inheritance or gift, as recently articulated by the American Law Institute ("ALI") in the Restatement (Third) of Torts: Liability for Economic Harm § 19 (Am. Law Inst. 2020) ("Third Restatement"). However, unlike the Majority, I would not require that the predicate harm, which forms the basis for the cause of action, occur prior to death. I would hold that Darlene's complaint fails to state a claim upon which relief can be granted; and therefore, dismissal was appropriate. Additionally, because Darlene has a remedy at her disposal within the probate proceeding, she has no separate remedy in tort. I write separately to explain my reasons.

As the Majority recognizes, the Third Restatement has recently been adopted. The Third Restatement, § 19 describes Interference with Inheritance or Gift as follows:

> (1) A defendant is subject to liability for interference with an inheritance or gift if:
>     (a) the plaintiff had a reasonable expectation of receiving an inheritance or gift;
>     (b) the defendant committed an intentional and independent legal wrong;
>     (c) the defendant's purpose was to interfere with the plaintiff's expectancy;
>     (d) the defendant's conduct caused the expectancy to fail; and
>     (e) the plaintiff suffered economic loss as a result.
>
> (2) A claim under this Section is not available to a plaintiff who had the right to seek a remedy for the same claim in a probate court.

I would adopt the Third Restatement because it closely mirrors the standard of liability for intentional interference with an economic relationship as articulated by this

Court, *see Alexander & Alexander Inc. v. B. Dixon Evander & Assocs., Inc.*, 336 Md. 635, 657 (1994), and is narrowly tailored to provide a remedy only in limited circumstances where there is no remedy available within the probate process.

By limiting the availability of the tort to situations where the plaintiff meets the elements of § 19(1) *and* has no right to seek a remedy for the same claim within the probate proceeding, the Third Restatement's articulation ensures that a litigant cannot bring a separate cause of action sounding in tort to bypass remedies available in the probate process. *See* Third Restatement, § 19, cmt. a (explaining that the Section is "intended . . . to provide relief when the defendant has committed an intentional legal wrong, the plaintiff has suffered injury as a result, and *no remedy is available in probate*[]"); *and* cmt. c ("A proceeding in probate is considered available, for purposes of this Section, *even if it offers less generous relief than would be attainable in tort* . . . . If a claim falls within a probate court's jurisdiction, or would have if timely, permitting a suit in tort is not appropriate.") (Emphasis added). The narrow scope of the tort is consistent with our jurisprudence preserving structural differences between tort law, contract law, and probate and equity. *See Alexander & Alexander*, 336 Md. at 654 ("[T]his Court has refused to adopt any theory of tortious interference with contract or with economic relations that 'converts a breach of contract into an intentional tort.'") (quoting *K & K Mgmt., Inc. v. Lee*, 316 Md. 137, 169 (1989)); *Kann v. Kann*, 344 Md. 689, 711–13 (1997) (rejecting a trust beneficiary's argument that the Court embrace a "universal" or "unisex" tort for breach of fiduciary duty, with an attendant right to a jury trial and right to recover damages, regardless of the nature of the underlying fiduciary relationship and traditional equitable remedies afforded).

2

I part ways with the portion of the Majority's holding that limits the application of the tort to situations where the intentional and wrongful conduct occurs *prior* to the death of the testator. The Majority chooses to focus on wrongful *interference with the relationship* between a decedent and an intended beneficiary rather than a wrongful *interference with the expectancy.* To support this unique articulation, the Majority notes that the illustrations in the Third Restatement all involve tortious conduct which occurred prior to the death of the decedent, and also mentions Maryland cases which "similarly involve interference with ongoing or prospective relationships." Maj. Slip Op. at 20. Further, the Majority points out that "we searched widely in other jurisdictions for a successful interference claim predicated on an interference with a relationship other than a prospective or then ongoing relationship, but found none." *Id.* at 21. I am not persuaded by the Majority's reasoning.

There is nothing in the Third Restatement's articulation of the tort that requires that the "intentional and independent legal wrong" occur prior to death. Nor is there a requirement that the intentional and independent wrong interfere with a "relationship."[1] The Third Restatement requires that the defendant intended to "interfere with the *plaintiff's expectancy*"—a notion very different from an "interference with a relationship."

---

[1] The Majority explains that in recognizing the tort and the illustrations offered in the Third Restatement, "[t]he key word is *relationship.*" Maj. Slip Op. at 18 (emphasis in original). Contrary to the Majority's position, the word "relationship" does not appear anywhere in the text of § 19 the Third Restatement or its illustrations. *See* Restatement (Third) of Torts: Liab. for Econ. Harm § 19.

(Emphasis added). Simply put, the required interference is with the gift or expectancy, not the relationship with the decedent.

Although I agree that Darlene has failed to state a cause of action under our pronouncement of the tort, I would not create an artificial barrier to potential recovery where a litigant can otherwise satisfy the requirements of § 19 of the Third Restatement simply because the independent wrongful conduct, which ultimately caused the expectancy to fail, occurred *after* as opposed to prior to, the decedent's death. To be sure, such a claim may be rare, but we should not create an arbitrary bar to recovery simply because we have not found a similar case.

Even with this Court's recognition of the tort as expressed in the Third Restatement (the position advocated by Darlene in this case), I would nevertheless affirm the dismissal of Darlene's case because the complaint fails to state a claim for which relief may be granted. We have previously held in the context of tortious interference with economic relations that "[w]rongful or unlawful acts include common law torts and violence or intimidation, defamation, injurious falsehood or other fraud, violation of criminal law, and the institution or threat of groundless civil suits or criminal prosecutions in bad faith." *Alexander & Alexander*, 336 Md. at 657 (citations and internal quotations omitted). As the Court of Special Appeals noted, "[Darlene] concedes that the facts do not support claims for malicious use of process or abuse of process, and admits that she can't prove that the individual cases were brought in bad faith." *Barclay v. Castruccio*, 2019 WL 1308136 at *5 (Md. Ct. Spec. App. Mar. 21, 2019). I agree that when viewed in the light most

4

favorable to Darlene, the complaint cannot support a claim for interference with an expected inheritance.

In the complaint, Darlene alleges that Sadie committed an intentional and independent legal wrong to disrupt her inheritance by instituting groundless civil suits in bad faith. Taking the claims set forth in the complaint in the light most favorable to Darlene, her complaint still fails to satisfy the requirements of § 19(2) of the Third Restatement because she has "the right to seek a remedy for the same claim in a probate court."

Assuming that Darlene's complaint sufficiently set forth an independent and wrongful tort—namely, that Sadie engaged in groundless litigation that she brought in bad faith with the intention of depleting the estate of assets, thereby causing Darlene's expectancy to fail because the assets were spent on litigation—Darlene and the Estate have remedies at their disposal. Maryland Rule 1-341 and Maryland Rule 6-141 provide them with the ability to recover attorney's fees where a person maintains or defends any proceeding in bad faith and without substantial justification. If Darlene or the Estate succeeded in proving that Sadie's litigation tactics were brought in bad faith for the sole purpose of spending all the available assets on attorney's fees and litigation expenses, the Maryland Rules provide a remedy by which Darlene and the Estate may recover these fees, costs, and expenses.

In the context of estate litigation, Md. Rule 6-141 provides:

> If the court finds that the conduct of any person in maintaining or defending any proceeding was in bad faith or without substantial justification, the court may require the offending

5

person or the attorney advising the conduct or both of them to pay to any other person and, when appropriate, to the estate the costs of the proceeding and reasonable expenses, including reasonable attorney's fees, incurred by the person or estate in opposing it.

Although Darlene concedes that "Md. Rule 6-141 seems to be broader in application than Md. Rule 1-341[,]" she claims that it only applies to actions brought before the orphans' court and cites Maryland Rule 6-101 for this proposition.[2] I disagree with Darlene's narrow interpretation of Maryland Rule 6-141. The language of the rule permits the recovery of attorney's fees where the court finds "that the conduct of any person in maintaining or defending *any proceeding* was in bad faith or without substantial justification[.]" Md. Rule 6-141 (emphasis added). Additionally, the orphans' court has the authority to require the offending person to pay reasonable attorney's fees incurred by "*any other person* and, when appropriate, . . . the estate[.]" *Id.* The applicable provisions of the Estates and Trusts Article of the Maryland Code allow the orphans' court to award attorney's fees where an estate is engaged in litigation and does not limit the personal representative's or the estate's recovery of attorney's fees to instances in which the action giving rise to the fees was brought within the orphans' court. *See* Maryland Code (1974, 2017 Repl. Vol., 2019 Supp.), Estates and Trusts Article ("ET") § 7-602(a) ("An attorney is entitled to reasonable compensation for legal services rendered by the attorney to the

---

[2] Contrary to Darlene's position, Maryland Rule 6-101 does not limit the orphans' court's ability to award attorney's fees only to proceedings arising in the orphans' court. Rather, Maryland Rule 6-101 simply states that the rules in Title 6 apply to proceedings involving the settlement of decedents' estates. As set forth *infra*, ET §§ 7-602 and 7-603 give the orphans' court the ability to award attorney's fees without regard to the forum where the proceeding arose.

estate or the personal representative or both.") *and* § 7-603 ("When a personal representative or the person nominated as personal representative defends or prosecutes a proceeding in good faith and with just cause, the personal representative or person nominated as personal representative shall be entitled to receive necessary expenses and disbursements from the estate regardless of the outcome of the proceeding."). If the personal representative is entitled to recover attorney's fees for litigation expenses out of the estate's assets under the applicable provisions of the Estates and Trusts Article, it follows that under the plain language of Maryland Rule 6-141, where a party has instituted or defended a proceeding in bad faith or without substantial justification, the orphans' court may require the offending person or the attorney advising them to pay the costs, including reasonable attorney's fees, regardless of whether the proceeding originated in the orphans' court or another forum.

The Maryland Rules provide Darlene and the Estate with a remedy to recover from a wrongdoer, their attorney's fees and other litigation costs and expenses incurred in defending actions brought in bad faith and without substantial justification. Although it is difficult to recover these attorney's fees given the burden of proving bad faith and lack of substantial justification, we will not allow a litigant to circumvent the remedies available in the probate proceeding under a new cause of action because the road to recovery within the probate process is more difficult.

For the above reasons, I respectfully concur.

Judge Getty has authorized me to state that he joins this opinion.

7