A11A1709. FORD v. REYNOLDS.
(726 SE2d 687)

ADAMS, Judge.

Plaintiff/appellant Beverly Ford appeals from the trial court's order granting summary judgment to defendant/appellee Harriet Reynolds.

The record shows that in February 2004, Harold Mobley named Reynolds, along with his wife Helen, as his attorney-in-fact.[1] Helen subsequently died, leaving only Reynolds in that role. The power of attorney granted Reynolds broad powers, including the authority to manage Mobley's real and personal property, and Mobley never took any action to terminate, revoke or restrict those powers in any way.

---

[1] The Mobleys did not have children, and Reynolds is not directly related to either Helen or Harold but was married to Helen's nephew.

The power of attorney also entitled Reynolds to make gifts to herself, not to exceed the greater of $5,000 or five percent of the value of all property subject to the power of attorney.

In August 2008, Mobley changed the beneficiary on an IRA account and an investment securities account he had at Wachovia Securities LLC (collectively referred to as the "Wachovia accounts") from his estate to Ford.[2] The next month, he changed the beneficiary back to his Estate. Mobley, who was 83 years old, fell in November 2008 and was hospitalized until December 2, 2008, when he was transferred to a nursing home. On that same date, Mobley once again changed his beneficiary on the Wachovia accounts from his Estate to Ford. On December 12, 2008, Mobley was moved back to the hospital after he developed a urinary tract infection, but was transferred back to the nursing home a short time later.

Around December 12, 2008, Reynolds contacted Wachovia Securities concerning Mobley's accounts and on December 15, 2008, Reynolds sent a letter to Mobley's doctor at the nursing home, requesting that he provide her with a letter stating that Mobley was unable to manage his affairs. Reynolds explained in her request that she needed the letter so that she could ascertain the status of Mobley's accounts at Wachovia and other financial institutions in order that arrangements for paying for his care could be made. In response, the doctor provided Reynolds with a letter stating that Mobley was mentally and physically unable to handle any of his personal and financial affairs and that those matters should be handled by Reynolds, as his attorney-in-fact, instead.

On or about January 6, 2009, Reynolds contacted Wachovia Securities and learned for the first time that Mobley had designated Ford as his beneficiary on the Wachovia accounts. The bank also informed Reynolds that Mobley had made three changes concerning the beneficiary on those accounts since August 2008. Over the next several days, Reynolds consulted with Mobley's family and, pursuant to the power of attorney, changed the beneficiary back to the Estate on the IRA account, requested certain checks be written from the Securities Investment account, including one to the nursing home, one to a funeral home for "pre-arrangements," one to a law firm for handling estate matters, and one to herself in the amount of $5,000, as authorized by the terms of the power of attorney. Additionally, Reynolds took the remainder of the funds from that account as well

---

[2] Ford is also not related to Mobley, and under the relationship box on the change of beneficiary form he describes her as a "friend." Further, the record shows that Mobley and Ford's father were friends from childhood, but that Ford's father had been dead since approximately 1954 and that Ford was only 13 months old when her father died.

as the funds from the surrender of an annuity and placed those funds in another financial institution where she could write checks on the funds, instead of having to request that the bank issue the checks.

Harold Mobley died a few days later on January 12, 2009. After learning that she was no longer named as the beneficiary on the Wachovia accounts, Ford filed suit against Wachovia on March 4, 2009, contending that she was entitled to damages for the alleged tortious interference with her economic expectancy in the accounts. Ford subsequently moved to add Reynolds as a defendant and filed an amended complaint asserting her claim for wrongful interference with an economic expectancy against both Wachovia and Reynolds. She also asserted a separate claim against Reynolds contending that Reynolds breached her obligations to Mobley by using the power of attorney to defeat Mobley's gifts to Ford and by making a gift to herself shortly before he died.

Reynolds filed a motion for summary judgment,[3] and the trial court granted the motion on the basis that Ford had failed to prove several of the essential elements of her claim of intentional interference with an economic expectancy. Further, the trial court also granted summary judgment on Ford's claims that Reynolds breached her obligations surrounding her use of the power of attorney, finding that Reynolds owed no duty to Ford and that Ford lacked standing to bring a claim against Reynolds for any duty Reynolds owed to Mobley. Because we agree that Reynolds was entitled to summary judgment on Ford's claims, we affirm.

Almost 100 years ago, our Supreme Court set forth the elements of a cause of action based on tortious interference with an economic expectancy:

> [W]here an intending donor, or testator, or member of a benefit society has actually taken steps toward perfecting the gift, or devise, or benefit, so that if let alone the right of the donee, devisee, or beneficiary will cease to be inchoate and become perfect, we are of the opinion that there is such a status that an action will lie, *if it is maliciously and fraudulently destroyed,* **and** *the benefit diverted to the person so acting,* thus occasioning loss to the person who would have received it.

---

[3] Ford dismissed with prejudice her claims against Wachovia on December 15, 2010.

(Emphasis supplied.) *Mitchell v. Langley*, 143 Ga. 827, 835 (85 SE 1050) (1915). See also *Morgan v. Morgan*, 256 Ga. 250, 251 (1) (347 SE2d 595) (1986) (quoting the holding in *Mitchell*).

In granting summary judgment to Reynolds, the trial court found that the evidence on at least two of the essential elements of Ford's claim against Reynolds was lacking. First the trial court held that "[c]ontrary to what [Ford] would have to prove, the evidence shows that Reynolds acted in good faith, without any malice or fraud" and noted specifically that Reynolds had acted in Mobley's best interest and for his benefit, after consulting his family and on the advice of counsel. Further the trial court found that Reynolds, who was neither Mobley's heir nor a beneficiary of Mobley's estate, did not receive any benefit from the actions she took in regard to the Wachovia accounts.

On appeal, Ford contends that the trial court erred by holding that she was required to show that Reynolds benefitted from her alleged tortious interference with the expected gift in order to recover, by holding that Reynolds was not liable for such tortious interference because of the power of attorney, and because genuine issues of material fact exist which preclude the grant of summary judgment.[4] However, as more fully set forth below, we find it necessary to address only Ford's first enumeration.

Ford argues that, contrary to the trial court's holding, the language in *Mitchell* requiring that a plaintiff show that the benefit from an alleged tortious interference with an economic expectancy be diverted to the tortfeasor should be confined to the facts of that case, pointing out that other jurisdictions that have relied on *Mitchell* have not adopted this as an element of the cause of action and that imposing this requirement subverts the primary purpose of the tort.

However, regardless of our view of the persuasiveness of these arguments, it seems to us that *Mitchell* requires both that the tortfeasor acted with malice and fraud and evidence that as a result of those malicious and fraudulent actions the economic benefit or gift which would have flowed to the plaintiff was diverted to the tortfeasor. The court's language does not seem open to our interpretation, a view that is strengthened by the fact that similar language appears at numerous points throughout the court's opinion.[5]

---

[4] In her reply brief on appeal, Ford states that she is not asserting a breach of fiduciary duty as a distinct cause of action, but rather contending that the "underlying breach of fiduciary duty is an element of the intentional interference claim."

[5] On page 830 of the *Mitchell* opinion the court refers to the right "to attack a fraudulent procurement of a change *by a third party who received the amount specified.*" (Emphasis supplied.) Subsequently the court notes that the fact that a certain status has not ripened into

Further, contrary to Ford's contentions otherwise, we do not believe that *Morrison v. Morrison*, 284 Ga. 112 (663 SE2d 714) (2008) requires a different result. In that case the alleged tortfeasor, who was the deceased's son, failed to use his power of attorney prior to his father's death to comply with specific written directions from the father concerning changes to the distribution of his estate. Although that opinion does not discuss many of the underlying facts, a prior opinion concerning the same facts but different legal claims makes reference to "a breach of fiduciary duty on account of self-interest in maintaining property in the estate to be devised to him under a will he procured for his own benefit" and that the son's refusal to comply with her father's request demonstrated the son's "self-interested manipulation of [his father] for [his] own benefit." *Morrison v. Morrison*, 282 Ga. 866, 868 (4) (655 SE2d 571) (2008). Thus, it appears that the alleged tortfeasor in *Morrison* also stood to directly benefit at the expense of others who his father had intended to receive certain benefits upon his death.

Because we conclude that the trial court did not err by holding that Ford was required to show that Reynolds benefitted from her alleged tortious interference with Ford's expected gift, and further agree that there was no evidence of such a benefit,[6] it is unnecessary for us to address Ford's other contentions.

*Judgment affirmed. Barnes, P. J., and Blackwell, J., concur.*

---

a vested and irrevocable ownership "does not authorize a third party to maliciously and fraudulently destroy the status . . . , *so that he will receive the fund.*" (Emphasis supplied.) Id. at 833. And then the court goes on to discuss "[t]he case of one who fraudulently prevents the making of a devise, *and procures the property to be left to himself* . . . ." (Emphasis supplied.) Id. at 834. Lastly, the final paragraph of the opinion states:

> Of course, in the instant case, it would be necessary, in order to recover, to show that a benefit would have accrued to the plaintiff, and that the statements of the defendant were false and fraudulent, and were the proximate cause of loss to the plaintiff. But where the member died soon after the change was fraudulently procured, *and the amount of the certificate was paid to the new beneficiary*, the case was susceptible of proof.

(Emphasis supplied.) Id. at 837.

[6] We do not belabor this point, except to note that we find meritless Ford's argument that the fact that Reynolds deposited the funds from the Securities account into a banking institution where her husband served on the Board of Directors created a question of fact about whether she benefitted from her actions. The only evidence on this issue shows that she made the transfer so she could write checks to pay Mobley's bills and that she received a favorable rate of interest on the account. Moreover, Ford acknowledges that, pursuant to the terms of the power of attorney, Reynolds was entitled to give herself the $5,000 gift (as the trial court noted, she was actually entitled to much more) but argues this circumstance should be considered in considering her intent.

DECIDED MARCH 27, 2012 — 

*Burnside Wall, James B. Wall*, for appellant.

*Tucker, Everitt, Long, Brewton & Lanier, Thomas W. Tucker, A. Montague Miller, Donsbach & King, John A. Donsbach, Joseph B. King*, for appellee.