**THIRD DIVISION**
**DOYLE, P. J.,**
**MARKLE and PADGETT, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**September 30, 2025**

# In the Court of Appeals of Georgia

A25A1313, A251314. FARMER v. MITCHELL et al.; and vice versa.

PADGETT, Judge.

These appeals arise from a dispute among siblings following their parents' deaths.[1] The dispute centers on interests, duties, and property connected to a trust executed by one of the parents. In Case No. A25A1313, James Farmer ("James") appeals the grant of summary judgment to Jason Farmer ("Jason") and Christie Lynn Mitchell ("Christie") based upon lack of standing. In Case No. A25A1314, Christie appeals from denial of an earlier motion for summary judgment, in which the trial court found that James had standing and that fact issues precluded summary

---

[1] Because Case Nos. A25A1313 and A25A1314 arise from the same lower court case number, they have been consolidated for the purpose of these appeals.

judgment. For the reasons that follow, we reverse the trial court's judgment in Case No. A25A1313, and affirm the denial of summary judgment in Case No. A25A1314.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. See OCGA § 9-11-56 (c). "We review a grant or denial of summary judgment de novo and construe the evidence in the light most favorable to the nonmovant." *Keng v. Keng*, 375 Ga. App. 797, 799 (2) (917 SE2d 810) (2025) (citation and punctuation omitted).

1. *Facts and Procedural Background*

Viewed in the light most favorable to James, the record shows that siblings James, Jason, Christie, and another brother, Jeremy, are the children of Bobby James Farmer and Judy Lenora Farmer. Bobby James Farmer passed away in April 2020, and his will designated his wife, Judy, as the sole beneficiary. In July 2020, the probate court admitted Bobby's will in solemn form and granted letters testamentary to Judy.

Thereafter, in August 2020, Judy executed an irrevocable trust, which named Christie as the trustee and instructed Christie to make the following specific distributions upon Judy's death: (1) approximately six acres of real property to Jason and Jeremy; and (2) any firearms, knives, tractors, and construction equipment and

supplies previously owned by Bobby, and as possessed by Judy at the time of her death, to James, Jason, and Jeremy. At that time, Judy also transferred title to the real property where she and Bobby had lived, as well as the six acres to be distributed to Jason and Jeremy, into the trust. The residuary assets of the trust were to go to Christie.

Three months later, in November 2020, Judy passed away. Although Christie filed a petition to probate Judy's will in solemn form, James objected and after a hearing, the probate court denied her petition, finding her unfit to serve as the personal representative of the estate. The probate court then, in September 2022, appointed the county administrator to administer Judy's estate.[2]

Around the same time, Jason had taken equipment from the parents' property that James maintains was trust property. Although Christie acknowledged that removal of the equipment was "unauthorized" and that she had a duty as trustee to "preserve [t]rust property," she declined to pursue recovery of the equipment. She also filed quit claim deeds transferring title to the two tracts of real property from the

---

[2] In March 2023, the probate court appointed the same county administrator as temporary administrator of Bobby's estate. Both Bobby's and Judy's estates have been pending in the Probate Court of Oconee County, but have been in a state of suspension due to various appeals.

trust to herself and her husband, including the tract that was to be distributed to Jason and Jeremy under the trust.[3] James then filed this action against Christie and Jason in superior court.[4]

In his most recently amended complaint, James asserted claims to set aside the trust based on undue influence by Christie; for tortious interference with economic expectancy against Christie; for conversion and trespass to personal property against both Christie and Jason; and for punitive damages against both Christie and Jason. He pleaded, in the alternative, for removal of Christie as trustee based on a conflict of interest with beneficiaries of the trust and her past and threatened future breach of duties owed to the trust ; for breach of trust against Christie; for trespass to realty, trespass to personal property, and conversion against Jason; for punitive damages

---

[3] Christie later returned the six acres to the trust.

[4] James also filed a motion to compel surrender of the equipment Jason took in the probate court, arguing the equipment was property of Bobby's estate. The probate court entered a consent protective order on that motion, which included an agreement to lease certain equipment back to Jason. Jason is currently appealing that order, among others, in a separate appeal. The current administrator of both Judy's and Bobby's estates also filed a petition for declaratory judgment in the trial court, seeking a declaration as to ownership of the equipment, as between the estates and Jason. Similarly, in this action, Christie asserted a cross-claim against Jason and a counterclaim against James seeking declaratory judgment regarding ownership of the same property.

4

against both; for declaratory judgment that Jason and Christie had violated the trust's in terrorem clause;[5] and for attorney fees under OCGA §§ 9-15-14 and 13-6-11 against both.

Christie moved for summary judgment in response to a previous version of the complaint,[6] which the trial court denied after a hearing. The trial court found that issues of fact existed on James's claims for removal of Christie as trustee and for breach of trust in light of Christie's actions in transferring the six acre property to herself and her husband, and in failing to use trust assets to pursue return of the equipment Jason had taken, all of which the trial court found demonstrated a potential conflict of interest, particularly where her decision not to seek return of the equipment had the effect of preserving residual assets of the trust that she would receive. The

---

[5] The trial court previously had dismissed James's claim that Christie violated the in terrorem clause of the trust. No party has enumerated the trial court's ruling dismissing that claim as error and it is not part of this appeal.

[6] That version of the complaint did not yet include James's claims to set aside the trust based on undue influence or for tortious interference with economic expectancy.

trial court similarly found fact issues existed related to whether Christie had acted in bad faith, which was required in order to prevail on a breach of trust claim.

On a subsequent motion for summary judgment, however, the trial court concluded that James lacked standing to bring his claims in superior court and determined that the issues presented in the case, including the claim to set aside the trust based on undue influence, should be resolved in the probate court. This appeal followed.[7]

In Case No. A25A1313, James contends that the trial court erred in finding that he lacks standing and that his claims are not ripe for review, and further erred in granting summary judgment on that basis, instead of dismissing his claims without prejudice. James also claims the trial court erred in holding that his claims for equitable relief should first be addressed by the probate court, a court he maintains

_____

[7] Jason filed a motion to dismiss the appeal, arguing that because the trial court ruled that James lacked standing to pursue his claims, this Court lacked jurisdiction to consider an appeal of that ruling. We do have jurisdiction to review a trial court's final judgment holding that a plaintiff lacked standing, and therefore deny the motion to dismiss the appeal in Case No. A25A1313. See OCGA § 5-6-34 (a) (1) (appellate jurisdiction exists where the judgment below leaves no issue remaining to be resolved, constitutes the trial court's final ruling on the merits of the action, and leaves the parties with no further recourse in the trial court); *North Walhalla Properties, LLC v. Kennestone Gates Condo. Assn., Inc.*, 358 Ga. App. 272, 274 (1) (855 SE2d 35) (2021) (reviewing trial court's final judgment based on lack of standing).

lacks jurisdiction. Finally, he contends the trial court erred in entering summary judgment, sua sponte and without required notice, on his claims to set aside the trust based on undue influence and for tortious interference with economic expectancy because the relevant motions did not seek to dispose of those claims. In Case No. A25A1314, Christie claims the trial court erred in denying her original motion for summary judgment.

2. *Jurisdictional Matters*

(a) *Jurisdiction of Probate Court*

As an initial matter, James claims that the trial court erred in holding that his trust-related claims for equitable relief, including the validity of the trust, should be raised first in the probate court. We agree.

"Trusts are peculiarly subjects of equity jurisdiction," and actions concerning the administration of a trust, except in limited circumstances not applicable to this appeal, "shall be maintained in superior court [.]" OCGA § 53-12-6 (a) and (b). As such, jurisdiction over trusts lies in the superior court, not the probate court.[8] *In re*

---

[8] Probate courts within counties having populations of more than 90,000 persons have concurrent jurisdiction with superior courts over certain actions concerning trusts, but the Probate Court of Oconee County is not one of those courts. See OCGA §§ 15-9-120 (2), 15-9-127 (a) (4), and 53-12-6;

7

*Longino*, 281 Ga. App. 599, 602 (3) (636 SE2d 683) (2006) (probate court lacks jurisdiction to rule on petition to void trust). Moreover, under OCGA § 23-2-91, a superior court, as a court of equity, may address matters related to administration of estates "where there is a danger of loss or other injury to a [person's] interest, or where equitable interference is required for the complete protection of the rights of the parties in interest." *Johns v. Morgan*, 281 Ga. 51, 54 (635 SE2d 753) (2006) (reversing this Court's conclusion that heirs at law lacked standing to pursue action in superior court against the executrix of their father's estate for conversion and breach of fiduciary duty, and holding that although heirs were not beneficiaries under the will, they had an "interest in the estate" under OCGA § 23-2-91 (2) and could seek equitable relief to protect potential assets of the estate). Thus, the trial court erred in ruling that the relief sought by James in his complaint, including his claims to set aside the trust and to remove Christie as trustee, should first be addressed by the probate court.

(b) *Standing to Bring Claims in the Trial Court*

---

https://data.census.gov/profile/Oconee_County,_Georgia?g=050XX00US13219 (last visited Sept. 18, 2025).

Under the Georgia Constitution, our courts "have the power to resolve only genuine controversies[,]" and for a genuine controversy to exist, a plaintiff must have standing to sue. *Republican Nat. Committee v. Eternal Vigilance Action, Inc.*, 321 Ga. 771, 775 (2) (917 SE2d 125) (2025). To establish standing, a plaintiff must show "that he has a legal right at stake that requires adjudication to protect it." Id. (citation and punctuation omitted). "Standing must be established as to each claim of relief sought." Id. We thus address each of James's claims in turn, with a focus on whether he has a legal right within the framework of the claim that may be protected by adjudication.

(i) *Trust-related claims*

To determine the issue of standing on James's trust-related claims,[9] we begin by identifying the statutory duties imposed on trustees and the rights conferred on trust beneficiaries. Under OCGA § 53-12-240, upon acceptance of the role of trustee, "the trustee shall administer the trust in good faith," and has certain statutorily-prescribed duties. Those duties include: a duty of care in administering the trust,

---

[9] James's trust-related claims include those to set aside the trust, for removal of Christie as trustee, for breach of trust by Christie, and for declaratory judgment that Jason had violated the trust's in terrorem clause.

OCGA § 53-12-241 (a); a duty to "administer the trust solely in the interests of the beneficiaries," OCGA § 53-12-246 (a); and, unless the trust instrument "clearly manifests an intention that the trustee shall or may favor" certain beneficiaries, a duty to "administer a trust impartially based on what is fair and reasonable to all of the beneficiaries and with due regard to the respective interests" of beneficiaries, OCGA § 53-12-247; see also *Smith v. SunTrust Bank*, 325 Ga. App. 531, 539 (1) (754 SE2d 117) (2014) ("As a fiduciary, a trustee is required to act for the benefit of the beneficiaries on all matters within the scope of their relationship," and "must exercise the highest degree of good faith as to all matters connected with the property committed to their care.") (citations and punctuation omitted). Our statutory scheme further provides that a "trustee shall be accountable to the beneficiary for the trust property," and that a "violation by the trustee of any duty that the trustee owes the beneficiary shall be a breach of trust." OCGA § 53-12-300. And where a trustee:

> commits a breach of trust, or threatens to commit a breach of trust, a beneficiary shall have a cause of action to seek: (1) To recover damages; (2) To compel the trustee to perform the trustee's duties; (3) To require an accounting; (4) To enjoin the trustee from committing a breach of trust; (5) To compel the trustee to redress a breach of trust by payment of money or otherwise; (6) To appoint a temporary trustee to take

10

possession of the trust property and administer the trust or to suspend a trustee with or without the appointment of a temporary trustee; (7) To remove the trustee; and (8) To reduce or deny compensation of the trustee.

OCGA § 53-12-301 (a). Thus, as a named beneficiary of the trust, James has standing to bring his trust-related claims. Cf. *In re Estate of Cheeley*, 376 Ga. App. 159, 166-168 (1) (b) (918 SE2d 388) (2025) (where a defendant-executor owes a fiduciary duty to beneficiaries of the estate, and the statutory scheme expressly recognizes causes of action that "beneficiaries" could pursue against the executor, those beneficiaries would have standing to pursue a breach of fiduciary duty claim, but a creditor of the estate would not have standing to pursue that claim).[10] And we conclude that legal title or the "presence" of certain personal property (some of which may not bear title) within the trust, due to an underlying estate not yet being terminated, is not necessary in order for James to have standing to seek to protect the legal rights conferred upon

---

[10] Because James's claims for punitive damages and attorney fees are derivative of his trust-related claims, he likewise has standing to pursue those claims. See OCGA § 53-12-302 (a) (4) (within an action for breach of trust, the trial court may, in its discretion, award reasonable attorney fees); *Jonas v. Jonas*, 280 Ga. App. 155, 163 (3) (d) (633 SE2d 544) (2006) (punitive damages are available against defendants who breach a fiduciary duty).

him by virtue of his being a named beneficiary of the trust.[11] See *Peterson v. Peterson*, 303 Ga. 211, 217 (3) (811 SE2d 309) (2018) (allowing beneficiaries to pursue breach of fiduciary duty claims against co-trustees based on the latter not properly funding a bypass trust and taking other actions that diminished estate assets that would otherwise fund the trust); *Peterson v. Peterson*, 352 Ga. App. 675, 681 (2) (835 SE2d 651) (2019) (in breach of fiduciary duty action, legally viable questions of fact included whether co-trustees failed to properly fund trusts and whether they wasted trust assets). To hold otherwise would result, in some instances, in trust beneficiaries having no ability to seek redress for failure of a trustee to fulfill his or her duties until after the statute of limitation under OCGA § 53-12-307 (a) had run. We decline to hold that Georgia law, which imposes duties upon a trustee, would also strip those to whom the duties are owed of their ability to protect their rights as beneficiaries by way of our standing doctrine.

---

[11] Indeed, whether the trust holds legal title to the equipment at issue at any given moment in time does not diminish a beneficiary's standing to set aside the trust based on undue influence or conflict of interest. See *Davison v. Hines*, 291 Ga. 434, 438 (2) (729 SE2d 330) (2012) (superior court could consider challenge to validity of will and trust based on undue influence; issues related to underlying will and estate were considered by probate court and, on appeal to superior court, were consolidated with previously-pending challenge to the trust).

We further note, however, that our holding that James has standing to pursue these trust-related claims does not mean that he will necessarily prevail and recover on the claims. The proper vehicle for determining ownership — as between Jason and the estates of Bobby and Judy, and thus, the trust — of the personal property at issue is the declaratory judgment action brought by the administrator of the estates in the trial court. See *Ewing v. Scott*, 366 Ga. App. 466, 468 n.5 (883 SE2d 410) (2023) ("A declaratory judgment action is the proper method for determining rights under [a] trust.") (citations omitted). Once that determination is made, the trial court can proceed with determining the parties' rights to property, if any, and liabilities under the trust.

(ii) *Claim for tortious interference with economic expectancy*

In order to recover on a claim for tortious interference with an economic expectancy, a plaintiff must show that a grantor has taken steps toward perfecting a gift or benefit that, if left alone, the right to that gift or benefit would become complete in the beneficiary, and that the defendant acted with malice and fraud to divert the economic benefit from the plaintiff-beneficiary to himself. See *Ford v. Reynolds*, 315 Ga. App. 200, 202-203 (726 SE2d 687) (2012). That the gift or transfer "was not fully

13

executed does not negate the viability of the claim." *Morrison v. Morrison*, 284 Ga. 112, 113 (1) (663 SE2d 714) (2008), disapproved of on other grounds, *Gilliam v. State*, 312 Ga. 60, 63 (860 SE2d 543) (2021). "To the contrary, the incomplete nature of the gift is actually a logical and necessary element of the tort of intentional interference with an [economic expectancy]." Id.

As explained in Division 2 (b) (i), supra, upon creation of the trust, Georgia law imposed duties upon Christie, and James's status as a beneficiary endowed him with a legally cognizable interest in the administration of the trust and its property. And with that cognizable interest, we hold that, as he does with his trust-related claims, James has standing to sue for tortious interference with that interest.[12]

(iii) *Trespass to realty, trespass to personal property, and conversion*

Actions for trespass to realty, trespass to personal property, and conversion typically require that the plaintiff have either legal title or the right of possession to the property at issue in order to have standing. See, e.g., *Brown Investment Group, LLC v.*

---

[12] Because we hold that James has standing to bring his trust-related claims and his claim for tortious interference with economic expectancy, we need not address his enumeration of error that the trial court erred in entering summary judgment on the two claims — to set aside the trust based on undue influence and for tortious interference with economic expectancy — that he maintains were not subject to the summary judgment motion.

*Mayor and Alderman of City of Savannah*, 289 Ga. 67, 68-69 (709 SE2d 214) (2011) (tax purchaser of real property did not have standing to sue municipality for trespass to the property during redemption period); *Williams v. Ga. Dept. of Corrections*, 338 Ga. App. 719, 722 (2) (791 SE2d 606) (2016) ("in order for a plaintiff to recover in a conversion suit he must show that he has title or right of possession to the [personal] property involved.") (citation and punctuation omitted). Thus, as a general rule, where legal title or a right of possession is in a trustee, "such trustee is the proper person to maintain or defend actions involving the trust estate." *Rollins v. Rollins*, 338 Ga. App. 308, 318 (1) (b) (790 SE2d 157) (2016) (citation and punctuation omitted). However, "[a]n exception to this rule is where the trustee refuses to act." Id. (citation and punctuation omitted); see also *Turner v. Trust Co. of Ga.*, 214 Ga. 339, 345 (1) (105 SE2d 22) (1958) ("There can be no serious question as to the right of the beneficiaries of a trust to apply to a court of equity to protect the trust property upon the refusal or failure of the trustee to do so."); *Restatement (Second) of Trusts* § 282 (2) (1959) ("If the trustee improperly refuses or neglects to bring an action against the third person, the beneficiary can maintain a suit in equity against the trustee and the third person."). Although James's trespass and conversion claims sound in law, the primary

relief he seeks is equitable and therefore, we conclude he has standing as a beneficiary to seek to protect trust property from the alleged wrongful possession by another.[13]

3. *Case No. A25A1314 and Discretion to Consider Other Grounds in Case No. A25A1313*

In Case No. A25A1313, Christie urges that we affirm a portion of the trial court's judgment on grounds not addressed by that court. Specifically, she argues that James's claims to set aside the trust and for tortious interference with economic expectancy are barred by equitable estoppel, ratification, and laches, and we should therefore affirm summary judgment on those claims.[14] Because these potential equitable bars were not addressed by the trial court and were not enumerated as error by any party here, we decline to exercise our discretion to consider whether summary judgment could be affirmed on those two claims. See *City of Gainesville v. Dodd*, 275 Ga. 834, 838-839 (573 SE2d 369) (2002) (appellate courts have discretion in

---

[13] Again, because James's claims for attorney fees and punitive damages against Jason are derivative of James's claims for trespass and conversion, James has standing to pursue those derivative claims. See *Mims v. Exclusive Assn. Mgmt., Inc.*, 372 Ga. App. 777, 780 (2) (906 SE2d 799) (2024) ("conversion is an intentional tort and will support an award of attorney fees and an award of punitive damages").

[14] Christie had moved to dismiss these two claims, but the trial court did not reference that motion or address the arguments contained therein in its order granting summary judgment based on lack of standing.

determining whether to consider grounds not addressed by the trial court and affirm according to the "right for any reason" rule).

In Case No. A25A1314, Christie claims the trial court erred in denying her original motion for summary judgment.

At the outset, we note that Christie asserts facts and advances arguments in this Court in support of her summary judgment motion that she did not raise in the trial court. Specifically, she claims here that she could not have breached her fiduciary duty as trustee because some equipment was transferred to Jason by Judy before creation of the trust. However, she did not make this argument to the trial court and has not identified how she allegedly preserved this issue for review, as is required by this Court's rules. See Court of Appeals Rule 25 (a) (5) (appellant's brief must include identification how each enumerated error was preserved for review, with appropriate citations to the record). As a result, we do not consider this argument in support of summary judgment. See *Pfeiffer v. Ga. Dept. of Transp.*, 275 Ga. 827, 829 (2) (573 SE2d 389) (2002) (holding that absent prescribed special circumstances, an appellate court need not consider arguments raised for the first time on appeal).

With respect to the facts and arguments she did advance before the trial court, we find no error in the trial court's determination that fact issues precluded summary judgment. The trial court correctly found that notwithstanding the discretion granted to Christie in the trust instrument, evidence of Christie's actions in transferring the six acres of real property to herself and her husband, and her decision not to use trust assets to seek the return of the equipment Jason had taken, created fact issues on whether she had a conflict of interest, thereby precluding summary judgment on James's claims to remove her as trustee and for breach of trust. Similarly, although an exculpatory clause in the trust instrument absolves her of liability for breach of fiduciary duty absent fraudulent conduct or bad faith, the trial court likewise correctly found that the same evidence of Christie's actions made the question of bad faith one for the factfinder. And with respect to Christie's claim that she was entitled to summary judgment because the property at issue is not yet being held by the trust, the trial court was correct in holding that, as a trustee, Christie was empowered to bring an action to determine ownership of the property at issue, even where the property would come from an estate that was not yet probated. See *Howell v. Bates*, 350 Ga. App. 708, 710-712 (830 SE2d 250) (2019) (trustee brought action for declaratory

judgment against beneficiary even though underlying estate was pending in probate court and holding that the estate was not a necessary party to the declaratory judgment action). Finally, we agree with the trial court that summary judgment was not warranted based on Christie's claim that James lacked damages and that the amount of damages, if any, should be determined by the factfinder. In addition to the monetary value of use of the equipment as evidenced by the lease payments agreed to in the consent protective order entered by the probate court, at a minimum, nominal damages may be awarded for breach of fiduciary duty. See *Moses v. Pennebaker*, 312 Ga. App. 623, 631 (4) (b) (719 SE2d 521) (2011).

For these reasons, we reverse the judgment in Case No. A25A1313, and affirm the trial court's order in Case No. A25A1314.

*Judgment affirmed in Case No. A25A1314, judgment reversed in Case No. A25A1313. Doyle, P. J., and Markle, J., concur.*